132 A.3d 946

CITY OF PHILADELPHIA, Appellant

v.

CITY OF PHILADELPHIA TAX REVIEW BOARD to the use of KEYSTONE HEALTH PLAN EAST, INC., Appellee.

City of Philadelphia, Appellant

v.

City of Philadelphia Tax Review Board to the Use of Keystone Health Plan East, Inc., Appellee.

City of Philadelphia, Appellant

v.

City of Philadelphia Tax Review Board to the use of QCC Insurance Company, Appellee.

City of Philadelphia, Appellant

v.

City of Philadelphia Tax Review Board to the use of QCC Insurance Company, Appellee.

City of Philadelphia, Appellant

v.

City of Philadelphia Tax Review Board to the Use of Keystone Health Plan East, Inc., Appellee.

City of Philadelphia, Appellant

v.

City of Philadelphia Tax Review Board to the Use of Keystone Health Plan East, Inc., Appellee.

City of Philadelphia, Appellant

v.

City of Philadelphia Tax Review Board to the Use of QCC Insurance Company, Appellee.

City of Philadelphia, Appellant

v.

City of Philadelphia Tax Review Board to the use of QCC Insurance Company, Appellee.

City of Philadelphia, Appellee

v.

City of Philadelphia Tax Review Board to the Use of
Keystone Health Plan East, Inc., Appellant.

City of Philadelphia, Appellee

v.

City of Philadelphia Tax Review Board to the Use of
Keystone Health Plan East, Inc., Appellant.

City of Philadelphia, Appellee

v.

City of Philadelphia Tax Review Board to the Use
of QCC Insurance Company, Appellant.

City of Philadelphia, Appellee

v.

City of Philadelphia Tax Review Board to the Use
of QCC Insurance Company, Appellant.

City of Philadelphia, Appellee

v.

City of Philadelphia Tax Review Board to the use of
Keystone Health Plan East, Inc., Appellant.

City of Philadelphia, Appellee

v.

City of Philadelphia Tax Review Board to the Use of
Keystone Health Plan East, Inc., Appellant.

City of Philadelphia, Appellee

v.

City of Philadelphia Tax Review Board to the use
of QCC Insurance Company, Appellant.

City of Philadelphia, Appellee

v.

City of Philadelphia Tax Review Board to the use
of QCC Insurance Company, Appellant.

Supreme Court of Pennsylvania.

Argued March 10, 2015.

Decided Dec. 21, 2015.

110

Craig R. Gottlieb, Esq., City of Philadelphia Law Department, for City of Philadelphia.

Stewart M. Weintraub, Esq., Jennifer Lauren Weidler, Esq., Chamberlain Hrdicka Attorneys At Law, for Keystone Health Plan East, Inc., QCC Insurance Company and City of Philadelphia Tax Review Board.

SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.

## *OPINION*

Justice EAKIN.

These cross-appeals involve tax credits and refunds for overpayments of the City of Philadelphia's Business Privilege Tax (BPT).[1] The City appeals from the Commonwealth Court's decision affirming the award of credits to Keystone Health Plan East, Inc., and QCC Insurance Company (collectively, Taxpayers), who appeal from the same decision affirming the denial of their refund requests.

In 1985, pursuant to the First Class City Business Tax Reform Act, 53 P.S. §§ 16181–16193, the City enacted the BPT, which taxes the gross receipts and net income of every person engaged in business within the City. Phila. Code § 19–2603. Under Philadelphia Code § 19–2601, "person" includes corporations and "business" is defined as "[c]arrying on or exercising for gain or profit ... any trade, business, ... or commercial activity[.]" *Id.* As with federal income taxes, a tax return and payment are to be filed by April 15, which payment reflects the tax due for the prior year, less estimates and credits. Also due that date is an estimated tax payment for the year ahead. *See* BPT Regulations (BPTR) § 202A; Trial Court Opinion, 12/27/12, at 2.

Taxpayers, subsidiaries of Independence Blue Cross, engaged in business in the City and paid the BPT tax for years 2003 and 2004, in April 2004 and 2005, respectively; they received extensions and filed the actual BPT returns for those years in September 2004 and 2005, respectively. In accordance with Philadelphia Code § 19–2601, Taxpayers calculated their net income using their federal taxable income, commonly referred to as Method II. *Id.,* Net Income (a)(2); *see also* BPTR § 404(1)(a). In 2008, the Internal Revenue Service (IRS) audited the federal tax returns of Independence Blue

---

1. In 2012, the BPT was renamed the Business Income and Receipts Tax; as this action was already begun, we will refer to the former name.

Cross and its subsidiaries, including Taxpayers. The audit was concluded in February 2009, and revealed Taxpayers understated their deductions, and thus overstated their net income, for tax years 2003 and 2004. As required by BPTR § 205, Taxpayers filed amended BPT returns, collectively requesting approximately $6.5 million in refunds. *See id.* (requiring taxpayer using federal method to file amended return within 75 days of "final determination of corrected net income" by IRS).

The Philadelphia Department of Revenue agreed Taxpayers overpaid their taxes, but denied the refund requests as untimely, citing Philadelphia Code § 19–1703(1)(d), which provides:

> Every petition for refund of moneys collected by the Department on or after January 1, 1980, for or on behalf of the City or the School District of Philadelphia, including but not limited to any tax, ... shall be filed with the Department *within 3 years from the date of payment* to the City or the School District of Philadelphia *or the due date, whichever is later.*

*Id.* (emphasis added).

Taxpayers appealed to the Philadelphia Tax Review Board, arguing the net income corrections effectively reset § 19–1703(1)(d)'s "due date" since they had 75 days from the completion of the IRS audit to file the amended returns. The Review Board rejected Taxpayers' argument, determining "due date" referred to the date the returns were initially due—April 15, 2004 and 2005, respectively. Tax Review Board Decision, 4/11/12, at 3–4. Notwithstanding this denial of *refunds,* the Review Board, *sua sponte,* awarded Taxpayers *credits* for their overpayments. Specifically, the Review Board concluded that because Philadelphia Code § 19–2610 requires the Department to establish regulations [2] for credits

---

**2.** Pursuant to § 19–2610, the Department enacted BPTR § 202A, which provides: "Any overpayment of the current tax year shall be applied first to the payment of an estimated tax for the tax year that follows or to other taxes due. A remaining balance, if any, shall be applied to future [BPT] years unless the taxpayer requests a refund amount." *Id.*

"to be granted on *any* overpayment of estimated tax payment," the Department was required to credit Taxpayers for overpayments for tax years 2003 and 2004. Tax Review Board Decision, 4/11/12, at 5 (quoting Phila. Code § 19–2610). Functionally, this meant Taxpayers received credits equal to their requested refunds. *See* N.T. Hearing, 12/29/11, at 8–11.

The trial court affirmed the Review Board's decision. The court agreed Taxpayers' refund requests were untimely but, unlike the Review Board, determined "due date" referred to the payment due date rather than the filing due date, finding § 19–1703(1)(d) was unambiguous because it did not mention returns. Trial Court Opinion, 12/27/12, at 6. While filing deadlines could be extended, and were here, the payment deadline remained April 15. The court further concluded no equitable exception to the three-year limitation applied because Philadelphia Code § 19–1703(1)(d) was a statute of repose, given that the provision delineated a period that began with a "definitively established event." Trial Court Opinion, 12/27/12, at 8. Similarly, because the "plain, unambiguous language" of § 19–2610 "clearly expresse[d an] entitlement to a credit for any overpayment without providing" a limitations period, the trial court affirmed the Review Board's credit determination. *Id.*, at 9. The court opined the dichotomy regarding a limitations period for refunds but not credits made sense because the City could prospectively budget for credits, whereas refunds constituted an immediate liability.

Both parties appealed, and a divided three-judge panel of the Commonwealth Court affirmed. Like the trial court, the Commonwealth Court determined the relevant refund and credit provisions were unambiguous. The majority agreed the absence of "return" in § 19–1703(1)(d) supported the conclusion that "due date" referred to the payment due date; thus, Taxpayers' refund requests were untimely since they were not filed within three years of the payment due dates. The majority also agreed no equitable exception to the three-year limitation applied, observing the trial court's conclusion comported with case law. *City of Philadelphia v. City of Phila. Tax Review Bd. ex rel. Keystone Health Plan East, Inc.*, Nos.

97–98 C.D. 2013, unpublished memorandum at 8–9, 2013 WL 6095552 (Pa.Cmwlth. filed November 18, 2013) (citing *City of Philadelphia v. Tax Review Bd. ex rel. Phila. Fresh Food Terminal Corp.*, 945 A.2d 802, 805 (Pa.Cmwlth.2008) (concluding § 19–1703(1)(d) is statute of repose)); *Phila. Gas Works v. Commonwealth*, 741 A.2d 841, 847 (Pa.Cmwlth.1999) ("Neither the Board nor this [c]ourt has power to alter the explicit time limitation ... in the [t]ax [c]ode based on equitable principles." (citation omitted)).

The majority further held the trial court did not err in affirming the award of credits. Specifically, the court rejected the City's argument that since *Phila. Gas Works* stated credits and refunds were interchangeable, § 19–1703(1)(d) applied logically to credits, as well as refunds. The court noted the underlying statute in *Phila. Gas Works* used the terms interchangeably, whereas the pertinent provisions in this matter used the terms distinctly. Moreover, as § 19–1703(1)(d) did not mention credits, the court reasoned the provision was unambiguous, and therefore, there was no need to ascertain legislative intent. And, even if the relevant provisions were ambiguous, the court concluded ambiguities were to be construed in Taxpayers' favor. *Keystone Health*, at 13 (citing *Skepton v. Borough of Wilson*, 562 Pa. 344, 755 A.2d 1267, 1270 (2000)).

In dissent, President Judge Pellegrini agreed with the majority's refund determination but disagreed with its credit conclusion, remarking there was no functional difference between credits and refunds because "in both [instances], someone has more money or less[.]" *Id.*, at 2 (Pellegrini, P.J., dissenting). In his view, the majority's position led to an absurd result since a party could seek credits in perpetuity, rendering the refund limitation period meaningless. *Id.*, at 3 n. 2. We granted allowance of appeal to address both the credit and refund issues:

Was President Judge Pellegrini correct in dissent that the majority's conclusion—that although there is a very strict three-year statute of limitations on requests for tax refunds, there is no statute of limitations at all on requests for tax

credits—is "absurd" in that it allows taxpayers to pursue tax overpayments against the City "forever," without any limiting principles whatsoever?

Whether, as a matter of law and equity, the Commonwealth Court correctly upheld the Philadelphia Court of Common Pleas by denying Taxpayers BPT refunds [under the circumstances].

*City of Philadelphia v. City of Phila. Tax Review Bd. ex rel. Keystone Health Plan East, Inc.*, 625 Pa. 557, 93 A.3d 803 (2014) (*per curiam*) (alteration in original).

■ Taxpayers present three core arguments regarding refunds: (1) BPTR § 205 resets the three-year limitation; (2) any ambiguity as to whether "due date" applies to a payment or a return should be construed against the City because § 19–1703(1)(d) is a taxing statute; and (3) even if the refund requests were untimely, an equitable exception applies under the doctrine of recoupment.[3]

First, Taxpayers aver BPTR § 205 when read *in pari materia* with § 19–1703(1)(d), dictates that the three-year limitation "must apply to all tax returns a taxpayer is required by law to file." Taxpayers' Brief, at 39. They submit their refund requests are timely because the three-year limitation either commences on the date the amended return is due or is extended until the amended return's due date. As to their equitable argument, Taxpayers contend § 19–1703(1)(d) is a statute of limitations since it begins to run from the time of an injurious occurrence, namely, the overpayments, which they note were unknown until the IRS audit. Taxpayers maintain the net-income corrections and amended returns constitute a single transaction, *see Household Consumer Disc. Co. v. Vespaziani*, 490 Pa. 209, 415 A.2d 689, 694 (1980) (observing recoupment claim and main tax claim must arise from single transaction or taxable event to merit application of recoup-

---

3. The doctrine allows "a party litigating a tax claim in a timely proceeding ... [to] seek recoupment of a related, and inconsistent, but now time-barred tax claim relating to the same transaction." *United States v. Dalm*, 494 U.S. 596, 608, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990).

ment doctrine), and thus equitable relief is warranted. Taxpayers' Brief, at 53.

Concerning credits, Taxpayers state applying the three-year limitation to claims for credits would effectively rewrite § 19–2610 and BPTR § 202A, as the former plainly allows a credit for any overpayment and neither provision provides a time limitation. Noting § 19–1703(1)(d) does not mention credits, they argue City Council could not have intended § 19–1703(1)(d) to apply to credits for overpayments because both the BPT and the relevant credit provisions were enacted after § 19–1703(1)(d). Finally, given that a taxpayer has a vested right to a refund but must continue to engage in business to actually receive a credit, Taxpayers submit credits and refunds are materially different.

The City initially notes a party seeking a credit or refund must strictly comply with the applicable provisions so as to prevent fiscal uncertainty as both remedies arise from "legislative grace." City's Brief, at 25. The City asserts the majority's conclusion allows credit requests in perpetuity. Remarking the decisions below placed too much emphasis on "any" in § 19–2610, the City argues the provision does not list a time limitation because it merely grants the Department authority to establish regulations for credits. Echoing President Judge Pellegrini, the City contends there is no meaningful distinction between the net effect of a credit and refund. The City argues the trial court's prospective budgeting distinction is flawed because the purpose of a time limitation is to allow a governmental entity to conclusively extinguish a claim for retroactive payment—regardless of whether it is termed a credit or refund.

As to refunds, the City states the argument that BPTR § 205 resets the "due date" in § 19–1703(1)(d) is erroneous since § 19–1703(1)(d) concerns payments, not returns, and even if it does apply to returns, there is no indication the provision applies to amended returns. Further, the City argues Taxpayers' contention that BPTR § 205 and § 19–1703(1)(d) must be read in *pari materia* lacks merit because: (1) the provisions do not relate to the same subject; (2)

allowing BPTR § 205 to serve as an exception would swallow the three-year limitation since the regulation also applies to self-amended federal returns; and (3) Taxpayers should have known they overpaid the City.

Lastly, whether § 19–1703(1)(d) is characterized as a statute of repose or a statute of limitations, the City asserts equitable relief is foreclosed. The City avers denying such relief is consistent with *DaimlerChrysler Corp. v. Commonwealth*, 885 A.2d 117, 120–21 (Pa.Cmwlth.2005) (concluding state refund provision is statute of repose and thus rejecting refund request despite event giving rise to request occurring after time limitation lapsed), as well as then-Justice Saylor's concurring statement in our *per curiam* affirmance of that case, *Daimler-Chrysler Corp. v. Commonwealth*, 592 Pa. 612, 927 A.2d 201, 203 (2007) (Saylor, J., concurring) ("[W]here a statutory limitation provision is not merely 'one of general application spanning all similar actions, but rather, derives from a specific proviso within a statute giving rise to the right sought to be vindicated,' a plaintiff must demonstrate that the action has been brought within the time limit . . . regardless of whether the provision is described as a statute of repose." (citation omitted)).

 As these issues involve matters of statutory interpretation, our standard of review is *de novo,* and our scope of review is plenary. *Commonwealth v. Hacker,* 609 Pa. 108, 15 A.3d 333, 335 (2011) (citation omitted). In interpreting local ordinances, we apply rules of statutory construction. *See Bailey v. Zoning Bd. of Adjustment,* 569 Pa. 147, 801 A.2d 492, 502 n. 19 (2002). The primary goal of statutory interpretation is to ascertain the intent of the enacting entity— presently, the Department and City Council. *See* 1 Pa.C.S. § 1921(a). Where a statute is unambiguous, its plain text will not be disregarded in furtherance of its spirit. *Id.,* § 1921(b). Ambiguity arises where there are two or more reasonable interpretations. *See Warrantech Consumer Prods. Servs., Inc. v. Reliance Ins. Co.,* 626 Pa. 218, 96 A.3d 346, 354–55 (2014) ("A statute is ambiguous when there are at least two reasonable interpretations of the text under review." (citation

omitted)). Where ambiguity is found, a court may consider the factors listed in 1 Pa.C.S. § 1921(c) to ascertain legislative intent. *See id.* Provisions imposing a tax are strictly construed, *Id.,* § 1928(b)(3), with any ambiguity resolved against the taxing entity and in favor of the taxpayer, *Greenwood Gaming & Entm't, Inc. v. Commonwealth, Dep't of Revenue,* 625 Pa. 55, 90 A.3d 699, 710–11 (2014).

■ Where a limitations period begins with a definitely established event that is independent of an injurious occurrence or discovery thereof, the statute is considered to be one of repose. *See Abrams v. Pneumo Abex Corp.,* 602 Pa. 627, 981 A.2d 198, 211 (2009). Unlike statutes of limitations, which are procedural, statutes of repose are substantive and thus wholly extinguish a party's cause of action upon the expiration of the time period. *See id.* (citation omitted).

■ Considering these principles, we hold Taxpayers are not entitled to refunds since their requests were not filed within three years of the date the BPT payments were due. As § 19–1703(1)(d) does not mention returns, we agree with the Commonwealth Court majority that the provision is unambiguous. The only reasonable interpretation is to confine § 19–1703(1)(d) to the later of (1) the date of payment or (2) payment due date. Applying § 19–1703(1)(d) to the return due date, much less an amended return's due date, would insert words where they do not appear. *See Sears v. Wolf,* 632 Pa. 147, 118 A.3d 1091, 1104 (2015) (citation omitted).

Likewise, we reject Taxpayers' argument that BPTR § 205 resets the three-year limitation. Statutes are considered *in pari materia* "when they relate to the same ... class of persons or things." 1 Pa.C.S. § 1932(a). If possible, statutes *in pari materia* "shall be construed together." *Id.,* § 1932(b). We conclude § 19–1703(1)(d) and BPTR § 205 do not relate to the same class of things or persons. Section 19–1703(1)(d) deals with a petition for a *refund* for *any* tax collected by the City or the Philadelphia School District. *See* Phila. Code § 19–1703(1)(d). In contrast, BPTR § 205 encompasses the requirement to file an *amended BPT return* in limited situa-

tions. Moreover, while § 19–1703(1)(d) deals with City taxpayers generally, BPTR § 205 applies to a discrete class of City taxpayers, *i.e.*, Method II BPT filers whose net income was subsequently adjusted. Broadly, both provisions deal with City taxpayers, but adopting Taxpayers' logic would require every City tax provision and Department regulation to be read *in pari materia*—an untenable result given the diverse spectrum of taxes the City imposes. *See generally* Phila. Code, Title 19 (listing over 30 types of taxes).

Further, even if statutes are *in pari materia*, construing them together is required only "if possible." 1 Pa.C.S. § 1932(b). As stated by the City, construing § 19–1703(1)(d) and BPTR § 205 as one provision would allow a narrow circumstance to swallow the general three-year limitation. As evidenced by their suggestion that the three-year limitation either commences on the due date of the amended return or is extended until the amended return's due date, even Taxpayers cannot specify the precise result of reading the two provisions together. Under the former, Taxpayers would have had until 2012 to file their refund requests. Thus, we are unpersuaded by the argument that BPTR § 205 resets the three-year limitation in § 19–1703(1)(d).

Moreover, assuming *arguendo* § 19–1703(1)(d) is ambiguous, we are not required to construe the statute in Taxpayers' favor. Only ambiguous provisions that *impose* a tax are to be construed in a taxpayer's favor. *See* 1 Pa.C.S. § 1928(b)(3); *Greenwood Gaming*, at 710–11. Rather than imposing a tax, § 19–1703(1)(d) defines a time limitation for seeking a refund. Relatedly, we conclude § 19–1703(1)(d) is a statute of repose and thus reject Taxpayers' equitable argument. The Commonwealth Court has previously addressed this issue. *See Phila. Fresh Food*, at 805 ("[S]ection 19–1703(1)(d) is a statute of repose."). As mentioned *supra*, a statute of repose delineates a defined time that begins with a definitely established event, independent of the injury or its discovery. *Abrams*, at 211; *see also Phila. Fresh Food*, at 805. Contrary to Taxpayers' position, the three-year limitation does not commence with the overpayments they claim are

an injurious occurrence or discovery thereof. Instead, § 19–1703(1)(d) begins with a definite and independent event—the later of the payment date or the payment due date—and runs for three years. Hence, Taxpayers' ability to pursue refunds was extinguished in 2007 and 2008, respectively, and relief under the recoupment doctrine is unwarranted. *See* Taxpayers' Brief, at 58 n. 12 (conceding argument under recoupment doctrine would be "affected" if § 19–1703(1)(d) is statute of repose).

■ Applying these same principles to credits, we hold the Commonwealth Court did not err in affirming the Review Board's award of credits to Taxpayers. Ambiguity here is found only if credits and refunds are the same thing, and whatever their similarities, they are not. "Store credit" is not the same as "your money back."

The pertinent provisions discuss terms of "credits" and "refunds" distinctly. Section 19–1703(1)(d) discusses refunds. Section 19–2610 and its progeny, BPTR § 202A, *see* n. 2, *supra*, discuss "credits to be granted on any overpayment of [an] estimated tax payment." Phila. Code § 19–2610. Whereas a refund involves an immediate liability to be paid by the City, a credit is an offset against future liability owed to the City. Stated otherwise, a refund must be paid promptly, while a credit allows the City to prospectively budget the liability—a difference we find material. There being no time limitation listed within the credit provisions, it is unreasonable to impute § 19–1703(1)(d)'s three-year limitation on claims for refunds to claims for credits—to do so would impermissibly rewrite the relevant provisions to insert a term where it does not exist. *See Allright Auto Parks, Inc. v. Zoning Bd. of Adjustment*, 107 Pa.Cmwlth. 448, 529 A.2d 546, 551 (1987) ("[J]udicial rewriting . . . however well intended [is] not legally warranted."). Accordingly, as there is no ambiguity, there is no need to consider the matters listed in 1 Pa.C.S. § 1921(c) to further ascertain legislative intent. *See Keystone Health*, at 12 n. 6 ("Here, there is no need to ascertain City Council's intent. The word 'credit' is not present.").[4]

Discerning no ambiguity within the relevant provisions, which provide a time limitation only for refunds, we affirm the decision of the Commonwealth Court in full.

Order affirmed; jurisdiction relinquished.

Justices TODD and STEVENS join the opinion.

Chief Justice SAYLOR files a concurring and dissenting opinion in which Justice BAER joins.

Chief Justice SAYLOR, concurring and dissenting.

I agree with the majority's treatment of Taxpayers' cross-appeal issue regarding the availability of refunds. I differ, however, with the decision to sustain the award of credits.

As to the matter of credits, initially, I agree with the majority that the Commonwealth Court erred in implementing a rule of construction favorable to Taxpayers. *See* Majority Opinion, at 122 n. 4, 132 A.3d at 954 n. 4. In the refunds/credits arena, the approach of construing ambiguities in favor of the government is based, in part, upon the principle that recompense for overpayments of voluntarily paid taxes (that is, taxes not paid under coercion or duress beyond mere adherence to the requirements of the law) is a matter of legislative grace and not entitlement. *See, e.g., Land Holding Corp. v. Bd. of Fin. & Revenue*, 388 Pa. 61, 65, 130 A.2d 700, 703 (1957) (explaining that "[t]he right to sue the Commonwealth for the recovery of money or taxes alleged to have been erroneously paid to it exists only by the grace of the Legislature[,]" and, accordingly, refund statutes are to be strictly construed).[1]

**4.** To the extent the panel majority opined that even if the provisions were ambiguous, they were to be construed in Taxpayers' favor, *id.*, at 13, the court erred. Like § 19–1703(1)(d), neither § 19–2610 nor BPTR § 202A imposes a tax, and thus, there is no requirement the provisions be construed in Taxpayers' favor.

**1.** *Accord Phila. Gas Works ex rel. City of Phila. v. Commonwealth*, 741 A.2d 841, 846 n. 6 (Pa.Cmwlth.1999) (refusing to apply strict construction against the government because "the dispute in this matter concerns the time limitation for seeking a refund or a credit of the prepaid taxes, not the rate or imposition of the ... tax" (emphasis added)); *see*

I differ, however, with the majority's depiction, substantively, that credits are entirely distinct from refunds, *see* Majority Opinion, at 120–22, 132 A.3d at 953–54, either generally or under relevant provisions of the Philadelphia Code. Indeed, the concept of the affordance of a refund by crediting an account due presently or in the future is so prevalent that this form of credit is often referenced as a "refund credit." *See, e.g., Royal Bank of Pa. v. Commonwealth,* 705 A.2d 515, 517 (Pa.Cmwlth.1998); *Pa. Retailers' Ass'ns v. PUC,* 64 Pa. Cmwlth. 491, 502 n. 12, 440 A.2d 1267, 1272 n. 12 (1982); *cf. Caver v. Cent. Ala. Elec. Coop.,* No. CV 15–0129–WS–C, 2015 WL 5286501, at *5 n. 8 (S.D.Ala. Sept. 8, 2015) ("[T]he common ordinary meaning of the term 'refunds' embraces both cash and credit varieties."). Accordingly, I find it likely that, when in imposing limitations on the availability of "refunds," a government body also intends to restrict the availability of refund credits. At the very least, there is ambiguity in this regard which, as explained above, militates in favor of the taxing body.

Even if this were not the case in general application, Section 19–1703 itself explicitly employs the refund-crediting concept. In this regard, Subsections 19–1703(5) and (8) each contemplate that, upon the granting of a refund by the Department or the Tax Review Board "the account of [the] petitioner may be credited with the amount of such refund," in lieu of the tender of a monetary payment. PHILA. CODE § 19–1703(5), (8). These provisions plainly allow a form of a credit, which is made available through the refund process and, accordingly, is explicitly subject to the limitations attending the availability of refunds.[2] For this reason, I find the reliance by the majority and the intermediate court on the absence of the word "credit"

also *Lacey Nursing Ctr., Inc. v. Dep't of Revenue,* 128 Wash.2d 40, 905 P.2d 338, 344 (1995) ("It is a general principle that tax statutes conferring credits, refunds or deductions are construed narrowly."). *See generally* 85 C.J.S. TAXATION § 2208 (2015) ("A refund of taxes is solely a matter of legislative grace, and any person seeking such relief must bring himself or herself clearly within the terms of the statute authorizing the same.").

**2.** Along these lines, Taxpayers acknowledge in their briefs that the permissive offsetting of an amount to be refunded against any taxes presently due from the taxpayer "is the absolute essence of a credit and clearly distinguishable from the former option of a refund." Brief for

from Section 19–1703(1)(d) to be unpersuasive. *See* Majority Opinion, at 121–22, 132 A.3d at 954 (quoting *City of Phila. v. City of Phila. Tax Rev. Bd.*, Nos. 97–98 C.D. 2013, *slip op.*, 2013 WL 6095552, at *6 n. 6 (Pa.Cmwlth. Nov. 18, 2013)).[3] Again, City Council affirmatively provided for credits in Section 19–1703, but solely as a means to effectuate the refunds already subject to the express three-year repose.[4]

Next, I turn to Taxpayers' arguments grounded upon Section 19–2610 of the Philadelphia Code, PHILA. CODE § 19–2610 (requiring the Department to promulgate regulations to provide for credits to be granted on overpayments of estimated taxes), and Section 202(A) of the Department's regulations, PHILA. BUS. PRIV. TAX REG. § 202(A) (implementing Section 19–2610 by prescribing that overpayments of a current tax year are to be applied first to the payment of an estimated tax for the tax year that follows or to other taxes due, then, in the absence of a refund, to future tax years). Upon review, I differ with Taxpayers' contention that these provisions were intended to encompass allowance for credit claims beyond the time period permitted for seeking refunds. In this regard, I do not view the filing of an amended tax return as harkening directly back to estimated tax payments, because there is a

Appellees at 25. Indeed, Taxpayers accept that statutory terms which embody such an offsetting concept—but which do not employ the actual word "credit"—nevertheless "explicitly refer[ ] to credits." Reply Brief for Appellees at 25. Thus, while they do not discuss Subsections 19–1703(5) or (8) in their submissions, Taxpayers' contentions are entirely consistent with the conclusion that such provisions expressly contemplate a form of a credit.

3. Notably, it is a cardinal principle of statutory construction that statutes are to be read as a whole. *See, e.g., Bd. of Revision of Taxes, City of Phila. v. City of Phila.*, 607 Pa. 104, 124–25, 4 A.3d 610, 622 (2010).

4. The majority suggests that the City is able to budget prospectively for liability based on credits. *See* Majority Opinion, at 121–22, 132 A.3d at 954. From my point of view, the ability to do so (for a time period depending on factors outside the City's control such as the extent of a taxpayer's present liabilities subject to offsetting) is far less significant than the City's apparently perpetual exposure to credits long after tax liabilities are believed to have been settled. *Accord City of Phila. v. City of Phila. Tax Rev. Bd.*, Nos. 97–98 C.D. 2013, *slip op.*, 2013 WL 6095552, at *7 & n. 2 (Pellegrini, J., dissenting).

material, intervening event, namely, the filing of an initial return. After the filing of the initial return—and its reconciliation of estimated tax payments with tax liabilities (particularly where this process encompasses provision of refunds or credits to taxpayers)—associated estimated tax payments can no longer be viewed in isolation, but rather, must be considered in light of the reconciliation which has occurred.[5]

For this reason, when City Council required the Department to promulgate regulations to provide for credits to be granted for overpayments of "estimated tax payments," PHILA. CODE § 19–2610, I find it unlikely that Council contemplated that such prescription would circumvent Section 19–1703(1)(d)'s three-year limitation and herald credit claims for overpayments submitted for the first time many years after the relevant tax year. Rather, while acknowledging that there is ambiguity, but applying a construction favorable to the government, I conclude that City Council intended for the reconciliation of estimated tax payments to be accomplished in tandem with the timely filing of an initial return. Thus, consistent with the City's position, I believe that the only appropriate procedure for a timely recoupment request is to seek a refund under Section 19–1703.[6]

5. This is amply demonstrated via reference to Appellee QCC Insurance Company's amended 2003 Business Privilege Tax return. Although this return, filed in 2009, reflects the same estimated tax payments figure that QCC had indicated on the initial return ($4,558,765), *compare* R.R. 26a *with* R.R. 79a, in the amended return, the company needed to account for a refund of $401,979 tendered by the City in November 2004 based on overpayments asserted in the initial return. This reconciliation, then—and not the estimated tax payments figure—measured against QCC's Business Privilege Tax liability, served as the basis for QCC's refund claim advanced in its 2009 amended return for the 2003 tax year.

Notably, the 2003 Business Privilege Tax form simply does not contemplate amended filings which require these sorts of reconciliations. Thus, QCC noted them by way of an annotation. *See* R.R. 79a. Consistent with my rationale above, I regard the form, Section 19–2610, and Section 202(A) as being analogous, in the sense that their content is geared primarily to the treatment of initial—and not later amended—returns.

6. Certainly, City Council could have been more specific, as well as provided particularized procedures for the submission of amended

I recognize the disparity arising out of the requirement for taxpayers to pay additional business privilege taxes, when implicated by a federal audit completed after the Section 19–1703(1)(d) limitations period has expired, and the enforcement of Section 19–1703(1)(d) to foreclose taxpayer refund claims submitted after such time. However, there simply is no salient requirement for equilibrium as between constraints upon the government (which represents the interests of the citizenry at large) and those affecting individual taxpayers.

Based upon the above, I would hold that, because Taxpayers failed to file their amended returns within the three-year period provided under Section 19–1703(1)(d), the availability of refunds and/or credits for their past overpayments was foreclosed.[7] Accordingly, I would reverse the order of the Commonwealth Court relative to the City's appeal (concerning tax credits) and affirm the order as to Taxpayers' cross-appeal (regarding refunds).

Justice BAER joins this concurring and dissenting opinion.

returns. The absence of such procedures, however, does not require that provisions which facially appear to relate to an initial reconciliation of estimated tax payments as such, accomplished by way of an initial return, should be expanded to encompass amended returns. Indeed, the Department's implementing regulation, PHILA. BUS. PRIV. TAX REG. § 202(A), also is most naturally read to focus on the allowance of credits pertaining to the reconciliation occurring upon the filing of an initial return. *See id.* ("Any overpayment of the current year tax shall be applied first to the payment of an estimated tax for the tax year that follows or to other taxes due. A remaining balance, if any, shall be applied to future [tax] years unless the taxpayer requests a refund of the amount.").

7. Viewed from the perspective of the Independence Blue Cross family of companies, the deductions to federal income tax liabilities overlooked by Taxpayers (*i.e.*, the subsidiaries) apparently mirrored an understatement of net income by Independence Blue Cross (the parent). This appeal, however, does not concern whether Independence Blue Cross might be entitled to an offset for payments made by its subsidiaries relative to any additional local business privilege tax liabilities which Independence Blue Cross may have incurred on account of the federal audit. Taking a relaxed view of corporate formalities, at least, it would seem that the decisions in *Bull v. United States*, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935), and *McNeil–PPC, Inc. v. Commonwealth*, 575 Pa. 50, 834 A.2d 515 (2003), cited by Taxpayers, might be more relevant to this issue.