J-S01016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| MATTHEW GROFF | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ASHLEY GROFF | : | No. 956 MDA 2021 |

Appeal from the Order Entered June 17, 2021
In the Court of Common Pleas of Union County Domestic Relations at
No(s):  19-90135

BEFORE:   BOWES, J., NICHOLS, J., and COLINS, J.[*]

DISSENTING MEMORANDUM BY BOWES, J.:          **FILED:  MAY 24, 2022**

I respectfully dissent.  I believe that the trial court erred in failing to include as income for the purpose calculating monthly child support obligations the federal COVID-19 stimulus payments Matthew Groff ("Father") and Ashley Groff ("Mother") received pursuant to the Coronavirus Aid, Relief and Economic Security Act ("CARES Act"), the Consolidated Appropriations Act, and the American Rescue Plan, hereinafter referred to collectively as the COVID-19 economic stimulus payments.[1]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1]  As it relates to the remaining issues, I agree with my learned colleagues that the trial court did not err or abuse its discretion in concluding that: (1) the Marital Settlement Agreement ("MSA") did not bargain away the child's right to child support; and (2) there was no material change in circumstance
*(Footnote Continued Next Page)*

The majority succinctly summarized the procedural history of this case and outlined our standard of review of a child support order. I note that, during the child support hearing, Mother and Father stipulated that they each received three COVID-19 economic stimulus payments, in the amounts of $1,200, $600 and $1,400, for a total of $3,200.[2] N.T., 5/11/21, at 13. Critically, the statutory framework expressly defines the disbursements as advanced payments of **income tax credits** that were created by adding and amending Section 6428 of the Internal Revenue Code.[3] *See* CARES Act of

_____

to justify Father's request to modify his obligations pursuant to the MSA to satisfy specific ancillary expenses relating to healthcare, childcare, and education.

[2] In addition, Mother received three payments totaling $2,500 on behalf of the minor child. As this money was earmarked specifically for the child's benefit, I would include it in the calculation for the parents' combined monthly net income under the support guidelines in the same manner that we incorporate a child's Social Security disability derivative benefits pursuant to Pa.R.C.P. 1910.16–2(b)(2)(i)(A)-(E).

[3] For example, the CARES Act provides in pertinent part as follows:

**SEC. 2201. 2020 RECOVERY REBATES FOR INDIVIDUALS**.

(a) IN GENERAL.—Subchapter B of chapter 65 of subtitle F of the Internal Revenue Code of 1986 is amended by inserting after section 6427 the following new section:

**SEC. 6428. 2020 RECOVERY REBATES FOR INDIVIDUALS**.

(a) IN GENERAL.—In the case of an eligible individual, there shall be allowed as a credit against the tax imposed by subtitle A for the first taxable year beginning in 2020 an amount equal to the sum of—

*(Footnote Continued Next Page)*

2020, Pub.L.No 116-136, § 2201 (adding 26 USC 6428), 134 Stat. 281, 335-37; Consolidated Appropriations Act of 2021, Pub.L.No. 116-260, § 272, 134 Stat. 1182, 1965-66; American Rescue Plan, Pub.L.No. 117-2, § 9601, 135 Stat. 4, 138-40.

Moreover, since the majority recited the relevant portions of guideline definition of monthly gross income pursuant to Pa.R.C.P. 1910.16-2(a)(8)(ii),

---

> (1) $1,200 ($2,400 in the case of eligible individuals filing a joint return), plus
>
> (2) an amount equal to the product of $500 multiplied by the number of qualifying children (within the meaning of section 24(c)) of the taxpayer.
>
> . . . .
>
> (f) ADVANCE REFUNDS AND CREDITS.—
>
> (1) IN GENERAL.—Subject to paragraph (5), each individual who was an eligible individual for such individual's first taxable year beginning in 2019 **shall be treated as having made a payment against the tax imposed by chapter 1 for such taxable year in an amount equal to the advance refund amount for such taxable year**.
>
> (2) ADVANCE REFUND AMOUNT.—For purposes of paragraph (1), **the advance refund amount** is the amount that would have been allowed as a credit under this section for such taxable year if this section (other than subsection (e) and this subsection) had applied to such taxable year.

CARES Act of 2020, Pub.L.No 116-136, § 2201, 134 Stat. 281, 335-37 (select punctuation and citation to 26 USC 6428 omitted) (emphases added). The relevant portions of the Consolidated Appropriations Act of 2021 and American Rescue Plan employ the same statutory framework.

concerning "other entitlements to money . . ., including . . . income tax refunds," I do not repeat it herein. However, I observe that the statutory definition, from which the guidelines are derived, specifically identifies income tax refunds as income for the purpose of determining a support obligation. Indeed, the Domestic Relations Act, Chapter 43, recognizes various sources of "income" as follows:

> "Income." Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; **income tax refunds**; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S. § 4302 (emphasis added). This broad definition of income aligns with our well-ensconced recognition of the twin tenets: "The principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses" and "the duty to support one's child is absolute[.]" *Mencer v. Ruch*, 928 A.2d 294, 297 (Pa.Super. 2007).

In light of the foregoing statutory framework, it is beyond argument that the COVID-19 economic stimulus payments, which constitute advances of a credit toward income tax refunds, fall squarely within the definition of income

pursuant to the Domestic Relations Act and the concomitant support guidelines.[4] Contrary to the majority, I would not ignore the express statutory definition of income as including income tax refunds in order to treat the COVID-19 economic stimulus payments as public assistance, which is not considered income for the purposes of calculating child support. *See* Pa.R.C.P. 1910.16-2 (b)(1) ("Neither public assistance nor Supplemental Security Income (SSI) benefits shall be included as income for determining support").

---

[4] The majority's attempt to craft a meaningful distinction between the advanced payment of tax credits in this scenario and tax refund illustrates its misapprehension of the three COVID-19 stimulus packages. *See* Majority Memorandum at 15 n.9. As noted in footnote three, each of the three economic stimulus statutes authorized the immediate payment of "Advance Refunds and Credits" that refunded payments deemed submitted in the first taxable year beginning in 2019. *See* CARES Act, Pub.L.No 116-136 § 2201. Stated plainly, the stimulus payments constitute an "advanced refund" on the credit. *Id*. Thus, notwithstanding the general differences between tax credits and tax refunds that the majority notes, it is indisputable that the stimulus packages authorized the actual payment of an income tax credit in the form of a refund, rather than a typical application of a credit toward the reduction of an individual's future tax liability. Thus, unlike the hypothetical "store credit" that the majority references in an attempt to bolster its position, the advanced payment of the tax credit under the stimulus packages is, in fact, identical to a tax refund, *i.e.* "the same as [getting] your money back." Majority Memorandum at 15 n.9 (quoting *City of Philadelphia v. City of Philadelphia Tax Review Bd. ex rel. Keystone Health Plan East, Inc.*, 132 A.3d 946, 953 (Pa. 2015)). Accordingly, the majority's endeavor to carve the Covid-19 stimulus payments from the tax-refund construct is unpersuasive. Moreover, regardless of the semantics concerning whether the COVID-19 economic stimulus payments were conveyed to tax payers as a credit or a refund, nothing in the certified record supports the trial court's conclusion that the payments are akin to public assistance.

The majority endorses the trial court's decision to exclude the stimulus payments based upon three reasons: (1) the payments were temporary in nature; (2) it would be unduly burdensome to account for payments for 2020 and 2021 and then reduce the income calculations when they payments ended; and (3) the payments were comparable to a public assistance payment. While the majority accepts the trial court's analysis, I cannot.[5]

First, the ephemeral nature of the COVID-19 economic stimulus payments is of no consequence. The statutory definition of income for the purpose of determining support is replete with temporary, lump sum awards. For example, bonuses, capital gains, insurance benefits, lottery winnings, and monetary awards and verdicts are all examples of one-time payments that the

_____

[5] The majority also relies upon what it sees as the deficient state of the record as a basis to affirm the trial court. *See* Majority Memorandum at 15 n.9 ("the trial court could not have discerned the complete picture of tax credits or possible income tax refunds for all of the stimulus monies received without having [tax documents]"). However, the fact that neither parent submitted tax documents into evidence is irrelevant. The only factual question pertinent to our determination of this issue concerns whether Mother and Father received the COVID-19 economic stimulus payments. The majority acknowledges that this evidence is in the certified record, "Father and Mother, through their respective counsel, admitted exhibits, including documents indicating that Father received $3,200.00 in COVID stimulus payments in 2020 and 2021, and that Mother received $3,200.00 on her own behalf, and $2,500.00 on behalf of the child." *Id*. at 5 (footnote omitted); *see also* N.T., 5/11/21, at 13. Thus, contrary to the majority's protestations, the certified record includes the precise information needed to resolve this matter. Despite my colleagues' apprehensions, there was no need for the trial court to "discern the complete picture of tax credits or possible income tax refunds" in order to properly determine that the stimulus payments constitute income pursuant to the Domestic Relations Act. *Id*. at 15 n.9.

statute recognizes as income for the purposes of determining support. *See* 23 Pa.C.S. § 4302. Hence, this aspect of the court's rationale is unconvincing.

Moreover, the certified record does not support the finding that it would place too great a burden on the domestic relations sections to treat the stimulus payments as income pursuant to 23 Pa.C.S. § 4302. To the contrary, during the *de novo* hearing, Lemay Feese, the representative from the Union County Domestic Relations Section ("Union County DRS") informed the trial court that it was not currently including the stimulus payment in the calculations, but she did not suggest that it would be unduly burdensome to do so. In actuality, Ms. Feese indicated, "We are not including them as income at this point." N.T. *De Novo* Hearing, 5/11/21, at 23.[6] She clarified that the decision to omit the economic stimulus payments was not dictated by the Pennsylvania Child Support Enforcement System ("PACSES"), but rather, it was the internal policy of her office, again, "at this point." *Id*. Rather than complain about a potential disruption to the statewide child support program, as the trial court suggests, Ms. Feese proffered the following explanation, "[T]hey were just a one-time payment, not expected to continue, just to stimulate the economy. So that is the reason we're not -- they are not expected to continue, you are not expected to get those funds again." *Id*. Responding to further inquiry from the trial court, Ms. Feese subsequently

---

[6] As Ms. Feese was not under oath during the exchange, I assume she contributed to the discussion as an officer of the court rather than a witness.

added, "When they started it, . . . nobody believed there would be three separate payments; that this would continue so long." *Id*. at 24. As the certified record does not sustain the trial court's reasoning that including the payments as income would be unduly burdensome on the Union County DRS, I cannot join my learned colleagues in supporting that position.

Next, notwithstanding the trial court's decision to equate the stimulus payments as public assistance, which the majority approves, neither the majority, the trial court, nor Mother provides citation to any authority for the underlying proposition that "the economic stimulus payments were designed as an economic safety net, designed to minimize the impact of the COVID pandemic [and] to cover lost income and the basic necessities eroded during the economic shut-down." Trial Court Order, 6/17/21, at 3. In contrast to this unsubstantiated pronouncement, the very name "COVID-19 economic stimulus payments" suggests that the payments were intended to stimulate the economy by providing additional money for consumer spending rather than establish a government-sponsored program akin to public assistance. *See* Benjamin Curry, Korrena Bailie, *What Is Fiscal Stimulus? How Does It Work?,* Feb. 19, 2022, https://www.forbes.com/advisor/personal-finance/fiscal-stimulus-packages ("Direct Subsidies—aka Stimulus Checks[:] Perhaps the most effective means of providing fiscal stimulus is via direct payments to citizens. Give a person money, and chances are they'll spend it on something, so the theory goes"). Indeed, "[o]ne of the cornerstones of

the CARES Act were the much-lauded stimulus checks[.]" *Id*. While I recognize that many recipients used the COVID-19 economic stimulus payments on household expenses, that reality does not transform the stimulus payments into public assistance.

Finally, I disagree with the majority's statement that the inclusion of the additional income would not result in a meaningful change to the child's basic support pursuant to the guidelines. *See* Majority Memorandum, at 14, n.8. In the February 17, 2021 support guideline calculation that is the genesis of this appeal, the Union County DRS calculated the parties' combined net monthly income to be $10,162.15. *See* DRS Order, 2/24/21, at 4 (Support Guideline Calculation). I observe that the inclusion of the $1,200 that Mother and Father each received in 2020 under the CARES Act, prorated over twelve months, increased the combined net monthly income by $200.[7] *See* Pa.R.C.P. 1910-16-4 (Calculation of support Obligation, Formula). Specifically, the combined $2,400 of income increases the combined net monthly from $10,162.15 to $10,362.15.

To maintain consistency with the relevant domestic relations calculation, I considered only the combined $2,400 that Mother and Father received in 2020 under the CARES Act. The additional $200 per month increased the

_____

[7] My calculation is purposefully conservative. The increase is greater when the stimulus payment is pro-rated over six months. *See* Rule 1910.16-2(a) ("Monthly gross income is ordinarily based on at least a six-month average of a party's income.").

basic child support by $10 from $1,450 per month to $1,460. *See* Pa.R.C.P. 1910-16-3 (Basic Child Support Schedule). Of course, adding the aggregate $4,000 stimulus payments that Mother and Father received during 2021 pursuant to the latter two stimulus packages would increase this amount substantially, as would the inclusion of the $2,500 sum that Mother received on behalf of the minor child pursuant to all three packages. As I stated in note two of this dissent, I would treat the $2,500 child benefit as income in the same manner that the guidelines treat child social security derivative benefits as income under Pa.R.C.P. 1910.16–2(b)(2)(i)(A)-(E), *i.e.* the amount is included in the calculation of the combined net monthly income in order to determine the correlating amount of basic support. Thus, the effect of the additional income is substantial.[8]

For all of the foregoing reasons, and recognizing that the support guidelines are designed to maximize the total income available to the child, I would find that the trial court erred in failing to include the COVID-19 economic stimulus payments in its calculation of the parties' child support obligations. On their face, the economic stimulus payments were advances of a credit toward an individual's income tax refund, which constitutes income

---

[8] Simply for the purpose of demonstration, and not for providing any guidance to the Union County DRS, I further observe that including all of the COVID-19 stimulus payments and child benefits in the calculation, again prorated over twelve months, would increase the combined monthly net income by $741.67, from $10,162.15 to $10,903.82, which in turn, increases the guideline amount of basic child support due to one child to $1,495.

pursuant to the express terms of Domestic Relations Act and support guidelines. Hence, I would reverse the child support order and remand for recalculation of Mother's child support obligation in light of the additional income the parties received in 2020 and 2021 from the economic stimulus payments.

Accordingly, I respectfully dissent.