IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher L. Hackett,      :
              Petitioner        :
                                 :
       v.                    :   No. 538 F.R. 2018
                                   :
Commonwealth of Pennsylvania,    :
              Respondent     :   Submitted: December 4, 2023

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                               FILED: January 26, 2024

      Christopher L. Hackett petitions for review of the June 13, 2018 Order of the Board of Finance and Revenue (BFR) affirming the decision of the Pennsylvania Department of Revenue's (Department) Board of Appeals, which denied his Petition for Reassessment of personal income tax for tax year 2014. We affirm the BFR's Order.

## **Background**

      In 2012, Mr. Hackett created Rides2Work (R2W), a limited liability company operated as a sole proprietorship, to connect vehicle drivers and riders interested in carpooling to and from their jobs in northeastern Pennsylvania for a fee. Stip. of Facts ¶¶ 3-5, 9.[1] When he created R2W, Mr. Hackett sought to monetize the concept of connecting "blue- and gray-collar" workers who could not afford a car, were without a license, or simply wanted a lower-cost alternative to transportation with

---

[1] The parties filed a Stipulation of Facts and accompanying exhibits with this Court pursuant to Pa.R.A.P. 1571(f) on May 15, 2023.

drivers who were traveling to the same or nearby worksites and who were looking to earn extra money by carpooling. *Id.* ¶ 10. Mr. Hackett envisioned that the cost to riders would be $5.00 for a one-way ride, $7.00 for a round-trip ride, and $15 for a last-minute ride per day. *Id.* ¶ 25. Although Mr. Hackett attempted to implement this pricing system for R2W, it never materialized because the website's users wanted the ability to set their own rates. *Id.* ¶ 26.

Mr. Hackett intended that R2W would receive 10% of the cost of the rides, using PayPal to process the payments. *Id.* ¶¶ 19-21, 28. Mr. Hackett and his employees engaged in website development, marketing, and advertising for the first two years with the goal of generating increased traffic to the R2W website. *Id.* ¶¶ 16, 23-24, 36, 50.

In September 2012, the first version of the R2W website became publicly accessible on the internet at [www.Rides2Work.com](www.Rides2Work.com). *Id.* ¶ 14. By October 31, 2012, 29 drivers and 50 passengers had registered on the R2W website. *Id.* ¶ 15.

As of April 2013, Mr. Hackett had not monetized the R2W website because he believed the projected revenue, based on the number of users at that time, was insufficient to continue R2W in the long term. *Id.* ¶ 33. Mr. Hackett intended to charge fees once he attained a sufficient number of users to sustain R2W in the long term. *Id.* ¶¶ 34-36.

In December 2014, Mr. Hackett determined that a reasonable target would be an increase of 200 drivers and 400 riders in that month. *Id.* ¶ 54. However, as of February 9, 2015, a total of 100 drivers and 200 riders were registered on the R2W website. *Id.* ¶ 55. In March 2015, Mr. Hackett shut down R2W. *Id.* ¶ 56.

Mr. Hackett chose not to monetize R2W because the website did not attract sufficient visits to generate revenue through advertising, and he was unable to recruit

sufficient drivers and riders to achieve a scale necessary to continue the business. *Id.* ¶ 57. R2W charged no fees to its users for ride matching, payment processing, or any other service and never placed advertising on the website. *Id.* ¶¶ 34, 58. R2W also did not generate any gross receipts. *Id.* ¶ 59.

For tax year 2014, Mr. Hackett reported zero income from R2W and claimed as a deduction $109,600 in business expenses for R2W on his personal income tax return.[2] *Id.* ¶ 62. The Department disallowed the expense deduction because it determined that R2W was not a "commercial enterprise" under Section 301(c) of the Tax Reform Code of 1971 (Tax Reform Code), Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7301(c) (defining a "business" as an activity "engaged in as commercial enterprise and conducted for profit or ordinarily conducted for profit"). *Id.* As a result, the Department assessed additional personal income tax against Mr. Hackett in the amount of $35,361.64 for tax year 2014, plus interest and penalties. *Id.* ¶ 68.

Mr. Hackett filed a Petition for Reassessment with the Board of Appeals. The Board of Appeals denied the Petition for Reassessment, concluding as follows:

> [R2W] reported its first loss of $114,060[] in 2013,[] its second loss of $109,600[] in 2014, and[] its third loss of [$]11,090[] in 2015. The Department disallowed $109,600[] losses in 2014 because the business reported no income. [R2W] *failed to meet the "commercial enterprise test" because the business did not have a plan,* [Mr. Hackett] *devoted 4 hours per week to the business and less than 1% of* [his] *livelihood depended on this activity, as a result,* [he] *was unable to deduct* [the] *business expenses claimed.*
>
> Upon review of the facts and circumstances presented in this appeal, the Board [of Appeals] finds [Mr. Hackett] has not established his claim that he had a business and not a hobby.

---

[2] On his 2014 Pennsylvania income tax return, Mr. Hackett reported a total of $12,100,867 in business income. BFR Decision, 6/13/18, at 1.

Bd. of Appeals Decision, 7/21/17, at 4 (emphasis added).

> Mr. Hackett then appealed to the BFR, which determined:
>
> Per the Department's regulations, three criteria must be met before gains or losses can be considered net profits or loss from the operation of a business. First, the gross profits from the activity must come from either: the marketing of a product or service to customers on a commercial basis or from securities employed as working capital in the business operations; accounts and notes receivable from sales of products or services sold in the ordinary course of the business operations; or assets which serve an operational function in the ordinary course of business operations. 61 Pa. Code § 103.12(b)(1)(i)-(iii). Second, the marketed activity must "be conducted with the manifest objective of achieving profitable operations." 61 Pa. Code § 103.12(b)(2). Third, the marketed activity must "be conducted with regularity and continuity and may not be limited or exclusive." 61 Pa. Code § 103.12(b)(3).

BFR Decision, 6/13/18, at 3. Applying these criteria, the BFR concluded that "[Mr. Hackett] . . . failed to show that [R2W] meets the commercial enterprise test. *During its existence,* [*R2W*] *never reported gross receipts* and never provided services to the public." *Id.* (emphasis added). Because Mr. Hackett failed to satisfy the commercial enterprise test, the BFR affirmed the denial of his Petition for Reassessment. Mr. Hackett now petitions this Court for review.[3]

---

[3] "This Court reviews *de novo* the determinations of the [BFR]. Stipulations of fact are binding upon both the parties and the Court. However, this Court may draw its own legal conclusions." *Kelleher v. Com.*, 704 A.2d 729, 731 (Pa. Cmwlth. 1997) (internal citations omitted); *see* Pa.R.A.P. 1571(h).

## Analysis

On appeal, Mr. Hackett's principal argument is that he was entitled to deduct expenses incurred in the operation of R2W for tax year 2014 because R2W was a "business" under Section 303(a)(2) of the Tax Reform Code, 72 P.S. § 7303(a)(2).[4]

The Department imposes personal income tax on certain classes of income received by a resident individual during a tax year, including "net profits." Specifically, Section 303(a)(2) of the Tax Reform Code provides:

> (2) Net profits. *The net income from the operation of a business, profession, or other activity, after provision for all costs and expenses incurred in the conduct thereof,* determined either on a cash or accrual basis in accordance with accepted accounting principles and practices but without deduction of taxes based on income.

72 P.S. § 7303(a)(2) (emphasis added); *see also* 61 Pa. Code § 103.12(a) ("Net profits shall be the net income from the operation of a business, profession or other activity after provision for all costs and expenses incurred in the conduct thereof."). Section 301(c) of the Tax Reform Code, in turn, defines a "business" as

> an enterprise, activity, profession, vocation, trade, joint venture, commerce *or any other undertaking of any nature when engaged in as commercial enterprise and conducted for profit or ordinarily conducted for profit*, whether by an individual, partnership, association or other unincorporated entity.

---

[4] Mr. Hackett also devotes a significant portion of his appellate brief to challenging the Board of Appeals' finding that R2W was merely a hobby and not a business. *See* Hackett Br. at 33-37. However, our review is limited to the decision of the BFR, which did not make such a finding. In any event, the Commonwealth agrees with Mr. Hackett that R2W was not a hobby, instead arguing that "R2W was a start-up project that never became a 'commercial enterprise.'" Cmwlth. Br. at 22 n.8.

5

72 P.S. § 7301(c) (emphasis added).  While "commercial enterprise" is not defined in the Tax Reform Code, our Court has interpreted the above statutory language and concluded as follows:

> Reading the provisions of Section 301(c) together with the provisions of Section 303(a)(2), *we conclude and hold that the legislature intended that the "business, profession, or other activity" of Section 303(a)(2), must be "engaged in as commercial enterprise" in order for the income derived therefrom to be taxable under Section 303(a)(2).*  Since the term "commercial enterprise" is not defined in the [Tax Reform] Code, we must, pursuant to [Section 1903 of the Statutory Construction Act of 1972, ]1 Pa. C.S. § 1903, construe that term according to its common and approved usage.  Without engaging in a lengthy discussion as to the common and approved usage of the term "commercial enterprise," *its sine qua non is*[] . . . *the rendering of goods or services to others in a market*[]*place.*

*Morgan v. Com.*, 400 A.2d 1384, 1386 (Pa. Cmwlth. 1979) (emphasis added); *accord Wettach v. Com.*, 620 A.2d 730, 733 (Pa. Cmwlth. 1993) (stating that *Morgan* "held that the *sine qua non* of a commercial enterprise is the rendering of goods and services to others in the marketplace"), *aff'd*, 677 A.2d 831 (Pa. 1995).

First, Mr. Hackett asserts that R2W was a "business" for personal income tax purposes because the evidence shows that R2W rendered services to others in a marketplace.  While we agree that R2W provided a service to others by connecting vehicle drivers and riders through its ridesharing website, we disagree that R2W provided its services to others "in a marketplace," as required by *Morgan*.[5]

Neither the Tax Reform Code nor our case law has defined the term "marketplace."  Generally, "[w]ords and phrases shall be construed . . . according to

---

[5] The BFR erroneously concluded that R2W "did not provide services to the public."  BFR Decision, 6/13/18, at 3.  While we disagree with this finding based on the stipulated evidence, as explained above, we nonetheless agree with the BFR's ultimate conclusion that "[Mr. Hackett] . . . failed to show that [R2W] meets the commercial enterprise test."  *Id.*

their common and approved usage." 1 Pa. C.S. § 1903(a). This Court has further stated that "where a court needs to define an undefined term, it may consult dictionary definitions for guidance." *THW Grp., LLC v. Zoning Bd. of Adjustment*, 86 A.3d 330, 336 (Pa. Cmwlth. 2014); *see also Com. v. Gamby*, 283 A.3d 298, 307 (Pa. 2022) ("To discern the legislative meaning of words and phrases, [the Supreme] Court has on numerous occasions engaged in an examination of dictionary definitions.") (collecting cases).

The dictionary definition of "marketplace" is a "place . . . where . . . *public sales* are held." *Merriam-Webster Online Dictionary*, available at https://www.merriam-webster.com/marketplace (last visited Jan. 25, 2024) (emphasis added). "Sales" are defined as "operations and activities involved in promoting and *selling goods or services*." *Merriam-Webster Online Dictionary*, available at https://www.merriam-webster.com/sales (last visited Jan. 25, 2024) (emphasis added). An alternate definition of "sales" is "gross receipts." *Id.*; *see also Merriam-Webster Online Dictionary*, available at https://www.merriam-webster.com/sale (last visited Jan. 25, 2024) (defining "sale" as "the transfer of ownership of something from one person to another *for a price*") (emphasis added).

Applying these definitions, as well as the common and ordinary usage of the terms "marketplace" and "sales," to the facts of this case, we conclude that Mr. Hackett failed to establish that R2W was a commercial enterprise because R2W did not "render[] . . . goods or services to others in a market[]place." *Morgan*, 400 A.2d at 1386. The stipulated evidence establishes that R2W did not charge or collect any fees for ride matching, payment processing, or any other service. Stip. of Facts ¶¶ 34, 58. It is also undisputed that R2W had no gross receipts. *Id.* ¶ 59. Consequently, while R2W provided services to others, it did not "sell" any of its services. *See id.*

¶ 37 (describing R2W as a "free ride-matching service"). Mr. Hackett made the decision to forgo charging fees to R2W's users because he believed doing so would result in a loss of existing users and would discourage new users from registering for its services. *Id.* ¶ 34. Because R2W had no "sales," we conclude that R2W did not provide services to others "in a marketplace."

We also conclude that R2W failed to satisfy the first criterion set forth in the Department's regulation at 61 Pa. Code § 103.12 (net profits regulation), which further defines "net profits." The net profits regulation provides:

> (b) To constitute net profits, *all of the following must apply*:
>
> > (1) *The gross profits shall be derived from one of the following*:
> >
> > > (i) The marketing of a product or service to customers on a commercial basis or from securities employed as working capital in the business operations.
> > >
> > > (ii) Accounts and notes receivable from sales of products or services sold in the ordinary course of the business operations.
> > >
> > > (iii) Assets which serve an operational function in the ordinary course of business operations.
> >
> > (2) The marketing activity shall be conducted with the manifest objective of achieving profitable operations.
> >
> > (3) The marketing activity shall be conducted with regularity and continuity and may not be limited or exclusive.

61 Pa. Code § 103.12(b) (emphasis added).

Mr. Hackett posits that subsection (b)(1) of this regulation means that "*if* 'gross profits' . . . are produced, then those 'gross profits' must be produced from the listed categories of activities to be considered part of the 'net profits'

8

calculation." Hackett Br. at 27-28 (emphasis in original). We disagree. Contrary to Mr. Hackett's suggestion, the net profits regulation does not contain the word "if." *See City of Phila. v. City of Phila. Tax Rev. Bd.*, 132 A.3d 946, 952 (Pa. 2015) (rejecting a proposed statutory construction that "would insert words where they do not appear"). Rather, the plain language of the net profits regulation *assumes* the existence of gross profits, unambiguously stating that "*all of the following must apply.*" 61 Pa. Code § 103.12(b) (emphasis added). In other words, "[t]o constitute net profits," there must first be "gross profits," and those "gross profits shall derive" from one of the three enumerated activities. 61 Pa. Code § 103.12(b)(1).

Moreover, in his appellate brief, Mr. Hackett acknowledges that "the term 'gross profits' . . . is generally defined as '[t]*otal sales revenue* less the cost of the goods sold, no adjustment being made for additional expenses and taxes.'" Hackett Br. at 28 n.2 (quoting Black's Law Dictionary (11th ed. 2019)) (emphasis added). As explained above, however, the stipulated evidence shows that R2W had no "sales revenue," because it never charged any fees for its services and had no gross receipts. Therefore, we conclude that because R2W had no gross profits, it failed to satisfy the first requirement of the net profits regulation.[6]

## Conclusion

We conclude that Mr. Hackett did not engage in a commercial enterprise, as that term has been defined and interpreted by our Court. The stipulated evidence establishes that R2W did not render its services to others in a marketplace because it never charged any fees for its services and did not produce any gross receipts. It is evident, based on the stipulated facts, that R2W was still in the exploratory phase

---

[6] Because we conclude that R2W failed to satisfy the first criterion of the net profits regulation, we need not address the remaining criteria, as all three are required to constitute "net profits." *See* 61 Pa. Code § 103.12(b).

when Mr. Hackett decided to shut it down due to his inability to recruit a sufficient number of drivers and riders to achieve a scale necessary to continue R2W in the long term. For these reasons, we conclude that Mr. Hackett was not entitled to deduct expenses incurred in the operation of R2W for tax year 2014 because R2W was not a "business" under Section 303(a)(2) of the Tax Reform Code. Accordingly, we affirm the BFR's Order.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher L. Hackett,         :
            Petitioner        :
                               :
      v.                       : No. 538 F.R. 2018
                               :
Commonwealth of Pennsylvania,    :
            Respondent     :

# **O R D E R**

AND NOW, this 26th day of January, 2024, the June 13, 2018 Order of the Board of Finance and Review is hereby AFFIRMED. This Order will become final unless exceptions are filed within 30 days after entry of this Order, pursuant to Pa.R.A.P. 1571(i).

_____
ELLEN CEISLER, Judge