J-A04021-26

2026 PA Super 133

| KEVIN & LISA HOLLINGER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JENNIFER DIETRICH, MICHELE | : | No. 740 MDA 2025 |
| MCCARTNEY, COLDWELL BANKER | | |
| RESIDENTIAL BROKERAGE, LISA | | |
| TIGER, ADVANCE REALTY, INC. | | |
| D/B/A CENTURY 21 GOLD AND JOHN | | |
| DOES 1-10, JOHN DOE CORP. 1-10 | | |

Appeal from the Order Entered May 7, 2025
In the Court of Common Pleas of Berks County Civil Division at No(s):
20-3489

BEFORE:  PANELLA, P.J.E., KING, J., and LANE, J.

OPINION BY KING, J.:                                    **FILED JUNE 23, 2026**

Appellants, Kevin and Lisa Hollinger, appeal from the final order of the Berks County Court of Common Pleas, entered on May 7, 2025, which granted the motion for summary judgment and motion for judgment on the pleadings filed by Appellee, Jennifer Dietrich ("Dietrich").[1]  Appellants challenge the trial court's November 16, 2020 order sustaining the preliminary objections of Appellees Lisa Tiger ("Tiger") and Advance Realty, Inc. d/b/a Century 21 Gold ("Advance Realty") (collectively "Buyers' Agents"); the July 19, 2021 order granting the motion for judgment on the pleadings filed by Appellees Michele McCartney ("McCartney") and Coldwell Banker ("Coldwell Banker")

_____

[1] We have amended the caption to include all defendants listed in Appellants' complaint.

(collectively "Seller's Agents"); the April 13, 2022 orders of the trial court which granted the motion for summary judgment filed by Buyers' Agents and granted the motion for summary judgment filed by Seller's Agents; the order entered September 27, 2022, which granted Dietrich's motions *in limine*; and the orders entered May 7, 2025, that granted Dietrich's motion for summary judgment and motion for judgment on the pleadings. We affirm.

The trial court set forth the relevant facts and procedural history of this case as follows:

> On April 24, 2017, [Appellants] entered into an agreement [("Agreement of Sale")] to purchase the real property located at 1413 Old Mill Road, Wyomissing, Pennsylvania ("the Property") from [Dietrich] with settlement to occur on June 29, 2017. [Appellants] were represented by [Buyers' Agents], while Dietrich was represented by [Seller's Agents] (collectively "Agent Defendants"). [Appellants] first discovered the Property on the market in 2017 and, after viewing the Property, were impressed with the high-end, quality finishes and construction of the Property. Prior to the transaction, [Appellants] reviewed the Sellers Disclosure Statement ("SDS"), as required pursuant to the Real Estate Seller Disclosure Law ("RESDL"), [68 Pa.C.S.A. §§ 7301-7315], provided by Dietrich, which indicated that the Property had a sump pump in working order and a sump pit, and that she was not aware of any water infiltration into the basement or of any repairs to control water or dampness issues, or other drainage or flooding issues. Dietrich did disclose in the SDS that a rehab and addition of the Property had been completed in 2006, which occurred prior to her marriage to her late husband and subsequent habitation of the Property. Further, Dietrich disclosed that a sewage backup in 2016 had necessitated new carpet, tile, and dry wall to be installed, as well as that the backup was "professionally blew out." [(Complaint, at Ex. A, p. 5)].
>
> [Appellants] filed suit against all Defendants on March 23, 2020, setting forth causes of action for violation of the

RESDL, civil conspiracy, fraud, breach of contract, negligence, and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). [73 P.S. §§ 201-1 – 201-10]. [Appellants'] Complaint alleged that prior to the [A]greement of [S]ale, [Appellants] reviewed the SDS that Dietrich [had submitted], which did not disclose any water damage. Likewise, [Appellants] noted that they specifically sought assurances from Dietrich, through the Agent Defendants, that no water infiltration had occurred at the Property.

However, [Appellants] claimed that shortly after settlement and closing, they noticed flooding in the basement of the Property. Further investigation prompted by concern led [Appellants] to discover, according to them, that the Property had experienced previous flooding in the basement over a long period of time. [Appellants] also alleged that a waterproofing system had been installed after an addition had been completed by Dietrich, which demonstrated that Dietrich knew that water infiltration into the basement was an issue. [Appellants] claimed that they engaged the services of a remediation expert who informed [Appellants] that the cause of the water infiltration was the improperly constructed addition to the Property and the landscape grading performed after the addition was completed.

[Appellants] additionally asserted that "many of their neighbors were experiencing similar water infiltration issues, and that the community in general routinely dealt with flooded basements." [(Complaint at ¶ 44)]. [Appellants] further alleged that [Tiger and McCartney] both lived in the area of the Property and, as such, coupled with their knowledge as real estate agents, they knew or should have known that water infiltration was a problem throughout the neighborhood.

(Trial Court Opinion, entered 5/7/25, at 1-3).

On August 5, 2020, Buyers' Agents filed preliminary objections to the complaint, arguing that the complaint failed to state a claim for count II-civil conspiracy, count III-fraud, count V-negligence, and count VI-UTPCPL

violations. On November 16, 2020, the trial court sustained Buyers' Agents' preliminary objections to Appellants' complaint in part and struck count II-civil conspiracy and count III-fraud from the complaint.[2]

On October 14, 2020, Dietrich filed preliminary objections challenging the sufficiency of the damages claimed and objecting in the nature of a demurrer to count II-civil conspiracy, count III-fraud, count V-negligence, and count VI-UTPCPL violation. On November 16, 2020, the trial court sustained Dietrich's objections in part, dismissing count II-civil conspiracy and count III-fraud. The court ordered Dietrich to file an answer to the remaining counts.

On May 20, 2021, Seller's Agents filed a motion for judgment on the pleading seeking to dismiss Appellants' claims for count II-civil conspiracy, count III-fraud, and count V-negligence. On July 19, 2021, the court granted Seller's Agents' motion for judgment on the pleadings. (Trial Court Order, entered 7/19/21).

On January 10, 2022, Buyers' Agents filed a motion for judgment on the pleadings as to the claims of count III-fraud, count V-negligence, and count

_____

[2] Despite the trial court's striking of count-III, fraud, from the complaint, the Buyers' Agents and Appellants proceeded as if the fraud claim remained viable; Buyers' Agents later moved for summary judgment as to count III-fraud, and obtained summary judgment in their favor. (**See** Buyers' Agents' Motion for Summary Judgment, 3/11/22; Trial Court Order, entered 4/13/22). However, because there is no indication that the trial court's November 16, 2020 order sustaining preliminary objections was ever vacated or amended, the record reflects that order as the operative order disposing of Appellants' claim for count III-fraud, as to the Buyers' Agents.

VII-UTPCPL violations, arguing that Appellants failed to allege sufficient facts to support their claims. Specifically, Buyers' Agents argued that Appellants failed to allege that they made any false or reckless representations, or that they knew that any representations made by Dietrich were false or reckless. Buyers' Agents also asserted that the UTPCPL claims against them could not be supported because the UTPCPL did not regulate the behavior of the buyers– Appellants–whom Buyers' Agents represented in the transaction; and further, Appellants failed to allege any factual support for their claims that Buyers' Agents engaged in any deceptive or unfair acts.

On January 13, 2022, Seller's Agents filed a second motion for judgment on the pleadings, arguing that Appellants had failed to adduce factual support for count I-RESDL violation because the RESDL requires that an agent have actual knowledge of the material defect to impose liability and Seller's Agents did not have a duty to complete an independent inspection of the Property. Seller's Agents further maintained that Appellants failed to identify any specific oral or written misrepresentation to support a violation of the RESDL. Finally, Seller's Agents insisted that Appellants were further barred from pursuing this claim based on the two-year statute of repose contained in 68 Pa.C.S.A. § 7311(b). Seller's Agents argued that even though the statute is titled as a "statute of limitations," it operates as a statute of repose because the viability of an action is extinguished two years after the date of settlement.

> Subsequently, on March 7, 2022, Dietrich filed a motion for judgment on the pleadings seeking judgment in her favor as

to the claims for violations of the RESDL and UTPCPL, breach of contract, and negligence. Dietrich first claimed that the RESDL and negligence claims were barred by the applicable statute of limitations or repose. Dietrich argued that the only contract between [Appellants] and Dietrich was the Agreement of Sale ("the Agreement [of Sale]"), which included that all representations and claims by Dietrich were not part of the Agreement [of Sale] unless expressly incorporated therein. Because the SDS was not expressly incorporated into the Agreement [of Sale], Dietrich contended, [Appellants] could not use the SDS as a basis for a breach of contract claim. Other terms of the Agreement [of Sale], according to Dietrich, included [Appellants'] inspection requirements, [Appellants'] acceptance of the Property "IN ITS PRESENT CONDITION…," and a release of Dietrich for defects or conditions of the Property. Finally, Dietrich claims that because the RESDL cause of action is barred by the statute of repose, and because the Agreement [of Sale] released Dietrich of liability for defects or conditions of the [P]roperty, [Appellants] also fail to sustain their cause of action for violations of the UTPCPL.

(Trial Court Opinion, entered 5/7/25, at 4-5) (unnecessary capitalization omitted). Dietrich filed a motion for summary judgment on March 10, 2022, seeking relief on the same basis as set forth in her motion for judgment on the pleadings.

On March 11, 2022, Buyers' Agents and Seller's Agents filed motions for summary judgment. On April 13, 2022, the trial court granted the motion for summary judgment of Buyers' Agents, entering judgment in favor of Buyers' Agents on the remaining claims against them: count V-negligence, and count VII-UTPCPL violation. That same day, the trial court granted the motion for summary judgment of Seller's Agents and entered judgment in their favor on the remaining claim against them, count I-RESDL violation. In both orders,

the trial court explained that the prior motions for judgment on the pleadings filed by Agent Defendants were moot pursuant to the grant of summary judgment relief.

Also on April 13, 2022, the trial court denied Dietrich's motion for summary judgment and granted, in part, Dietrich's motion for judgment on the pleadings dismissing count III-fraud based on Appellants' concession that no specific evidence of fraud, sufficient to meet the legal standard, had been offered. The court thereafter scheduled the case for a jury trial to begin on October 4, 2022.

On August 8, 2022, Dietrich filed motions *in limine*. In the first motion, she sought exclusion of any agreement, including the SDS, that was outside of the Agreement of Sale. Dietrich argued that pursuant to the terms of the Agreement of Sale, Appellants accepted the Property "as is," and specified that the Agreement of Sale was all-inclusive as to the terms of sale and did not include the SDS. Dietrich next sought to exclude the testimony of Appellants' expert, arguing that Appellants failed to provide any expert reports pursuant to the deadlines set forth in the case management order. Finally, Dietrich sought to exclude any testimony regarding the SDS based on her continued argument that the count I-RESDL violation claim was barred due to the statute of repose, and thus, admission of the SDS was also barred.

The court heard argument on the motions *in limine* and, on September 27, 2022, the court granted Dietrich relief. Specifically, the court excluded

Appellants' expert testimony, any testimony regarding the SDS, and testimony to any agreement other than the Agreement of Sale.

Appellants initially purported to appeal from the trial court's orders granting the Agent Defendants' motions for summary judgment and the order granting Dietrich's motions *in limine*. However, this Court quashed the appeal as interlocutory and remanded to the trial court for further proceedings. ***See Hollinger v. Dietrich***, No. 1623 MDA 2022, No. 1624 MDA 2022, No. 1625 MDA 2022, No. 1626 MDA 2022, No. 1629 MDA 2022 (Pa.Super. filed Jan. 3, 2024) (unpublished memorandum). Upon remand, the trial court held a status conference during which Dietrich asked the trial court to reconsider Dietrich's motion for summary judgment.

On May 7, 2025, the trial court granted Dietrich's motion for summary judgment as to count I-RESDL violation, and granted Dietrich's motion for judgment on the pleadings as to count IV-breach of contract, count V-negligence, and count VI-UTPCPL violation. (Trial Court Order, entered 5/7/25). In its accompanying opinion, the trial court explained that it interpreted the RESDL as a statute of repose, rather than a statute of limitations; hence, Appellants had two years from the date of sale to commence an action. The court further found that the statute of repose applicable to the RESDL extinguishes the claims thereto and excludes the SDS. Because Appellants had relied solely on the SDS in support of the remaining claims, the court found that Appellants had failed to aver relevant allegations

- 8 -

J-A04021-26

to support the causes of action for breach of contract, negligence, or violations of the UTPCPL. Appellants filed a timely notice of appeal, and pursuant to the court's order, Appellants filed their concise statements of errors complained of on appeal.[3]

Appellants raise the following issues on appeal.

> 1. Whether the trial court erred as a matter of law and/or abused its discretion in its November 16, 2020 order

---

[3] On August 19, 2025, this Court entered a rule to show cause why the appeal should not be quashed, because it was unclear whether the May 7, 2025 order was final where it left unresolved the claims against John Doe 1-10 and John Doe Corp. 1-10. Appellants responded arguing that the inclusion of John Doe defendants did not mean that there were outstanding claims remaining. Rather, Appellants maintained that the issue of whether claims remained depended on whether the John Doe defendants constituted "legal parties" to the action. Appellants asserted that because no claims were affirmatively pled against the John Doe defendants, their presence in the pleadings did not prevent the order from being final.

Generally, appeals may be taken only from final orders. *See* Pa.R.A.P. 341(a). A final order is one that disposes of all claims and all parties. ***Reason v. Kathryn's Korner Thrift Shop***, 169 A.3d 96, 100 (Pa.Super. 2017) (reiterating that orders which do not dispose of all claims and all parties are interlocutory and unappealable). In ***Zane v. Friends Hospital***, 770 A.2d 339 (Pa.Super. 2001), *reversed on other grounds*, 575 Pa. 236, 836 A.2d 25 (2003), this Court held that an order was final, despite the presence of "Dr. John Doe" on the caption, because Dr. John Doe was not a legal party as he had never been identified, never been served, and had never entered an appearance in the action. ***Id.*** at 340 n.1. Similarly, in ***Weiley v. Albert Einstein Med. Ctr.***, 51 A.3d 202 (Pa.Super. 2012), this Court held that where a John Doe defendant was never identified, and had never entered an appearance, he was not a legal party. ***Id.*** at 215.

Here, we note that the John Doe 1-10 and John Doe Corp. 1-10 defendants were never identified, never served, and had never entered an appearance in the action. Thus, we agree with Appellants that the John Doe defendants did not constitute legal parties to the action, and their presence in the pleadings does not prevent the May 7, 2025 order from being a final order.

- 9 -

[sustaining Buyers' Agents'] preliminary objections to [Appellants'] claim for fraud where there was substantial factual evidence demonstrating that … Tiger was aware of water infiltration in [Appellants'] home and failed to inform [Appellants] of such water infiltration, despite [Appellants'] specific requests that the home not be subject to water infiltration, and where such non-disclosure of a material fact is tantamount to a material misrepresentation?

2. Whether the trial court erred as a matter of law and/or abused its discretion in its April 13, 2022 order granting [Buyers' Agents'] motion for summary judgment where there was substantial factual evidence demonstrating that … Tiger knew or should have known of water infiltration in [Appellants'] home and failed to inform [Appellants] of such water infiltration in violation of her duties, as well as in violation of the [UTPCPL], and where the Supreme Court and the Superior Court have routinely found that where a buyer's agent knew or should have known about latent defects in a home, and where the plaintiffs made clear that they were relying on representations relating to the presence of such latent defects, a realtor has a duty to ensure that the representations made are correct[?]

3. Whether the trial court erred as a matter of law and/or abused its discretion in its July 19, 2021 order granting [Seller's Agents'] motion for judgment on the pleadings as to [Appellants'] claims for fraud and negligence where there was substantial factual evidence demonstrating that … McCartney was aware of water infiltration in the [Appellants'] home, had an affirmative duty to disclose it, and failed to inform [Appellants] of such water infiltration, despite [Appellants'] specific requests that the home not be subject to water infiltration[?]

4. Whether the trial court erred as a matter of law and/or abused its discretion in its April 13, 2022 Order granting [Seller's Agents'] motion for summary judgment where there was substantial factual evidence demonstrating that … McCartney knew or should have known of water infiltration in the [Appellants'] home and failed to inform [Appellants] of such water infiltration in violation of her duties under the [RESDL]?

5. Whether the trial court erred as a matter of law and/or abused its discretion in its May [7], 2025 order granting … Dietrich's motion for summary judgment and to exclude testimony regarding the [SDS] on the basis that it is subject to the principles of a statute of repose where there is no controlling law applying the principles of a statute of repose to the statute, and the fact that the statute itself is specifically identified as a statute of limitation, thus compelling the conclusion that the RESDL is not a statute of repose, and is subject to the discovery rule and the equitable tolling doctrine?

6. Whether the trial court erred as a matter of law and/or abused its discretion in its May [7], 2025 order granting … Dietrich's motion for summary judgment and to exclude testimony regarding the [SDS] on the basis that it is subject to the principles of a statute of repose where such preclusion excluded affirmative statements that were relevant to [Appellants'] claims for violation of the [UTPCPL], as well as [Appellants'] claims for breach of contract, and where the mere fact that [Appellants'] claim for violation of the [RESDL] may have lapsed did not render such statements irrelevant or prejudicial?

7. Whether the trial court erred as a matter of law and/or abused its discretion in its May [7], 2025 order granting … Dietrich's motion for summary judgment seeking to exclude any agreement other than the Agreement of Sale where the Agreement of Sale specifically references the [RESDL] and states that "the [RESDL] requires that before an agreement of sale is signed, the seller in a residential real estate transfer must make certain disclosures regarding the property to potential buyers in a form defined by law" and therefore any documents and testimony demonstrating such attempts to either to comply with the law by providing a [SDS], (given that such a requirement is specifically referenced within the Agreement of Sale) by providing her disclosures must be allowed?

8. Whether the trial court erred as a matter of law and/or abused its discretion in its May [7], 2025 order granting … Dietrich's motion for summary judgment ostensibly on the basis that [Appellants] did not submit expert reports where [Appellants] identified John Hoeffert as a witness in their

- 11 -

> pre-trial memorandum, and produced his report in discovery well prior to the July 1, 2022 deadline on March 1, 2022, and identified Construction Master Services in their pre-trial memorandum and submitted its proposal to repair the defects in discovery on March 1, 2022, and submitted opposition both filed and at oral argument[?]

(Appellants' Brief at 11-15) (unnecessary capitalization omitted).

In their first issue, Appellants contend that the trial court erred when it granted Buyers' Agents' preliminary objections to Appellants' claim for fraud. Specifically, they assert that Buyers' Agents failed to inform them of water infiltration in the home despite Appellants' specific requests to purchase a home without water damage. Appellants further maintain that there was substantial evidence that Buyers' Agents were aware of water infiltration in the home. Appellants insist that at the preliminary objections stage of the proceedings, the trial court was required to accept as true Appellants' averments that Tiger, who lived in the neighborhood, had knowledge about a history of water infiltration throughout the community. Likewise, Appellants assert that the trial court was obligated to accept as true their pleading that "all Defendants expressly assured Plaintiffs that no such water damage or infiltration had ever occurred. These representations were reflected in the legally-obligated disclosures provided by the seller and the seller's agent." (Complaint at ¶ 9). Appellants argue that Buyers' Agents had a fiduciary duty to disclose the prior water infiltration and yet concealed these facts for their own benefit to earn the commission from the sale of the home. Accordingly, Appellants insist that they pled sufficient facts to support their claim for fraud

against Buyers' Agents, and the trial court erred in sustaining the preliminary objections. We disagree.

The relevant scope and standard of review in examining a challenge to an order sustaining preliminary objections are as follows:

> Our review of a trial court's sustaining of preliminary objections in the nature of a demurrer is plenary. Such preliminary objections should be sustained only if, assuming the averments of the complaint to be true, the plaintiff has failed to assert a legally cognizable cause of action. We will reverse a trial court's decision to sustain preliminary objections only if the trial court has committed an error of law or an abuse of discretion.
>
> All material facts set forth in the complaint as well as all inferences reasonably [deducible] therefrom are admitted as true for [the purpose of this review]. The question presented by the demurrer is whether, on the **facts** averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Lerner v. Lerner*, 954 A.2d 1229, 1234 (Pa.Super. 2008) (emphasis in original) (internal citations omitted). *See Burgoyne v. Pinecrest Community Ass'n*, 924 A.2d 675, 679 (Pa.Super. 2007) (stating: "To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred") (citation omitted).

> In order to prove fraud the following elements must be shown: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

***Milliken v. Jacono***, 60 A.3d 133, 140 (Pa.Super. 2012), *aff'd*, 628 Pa. 62, 103 A.3d 806 (2014) (citing ***Youndt v. First National Bank of Port Allegany***, 868 A.2d 539, 545 (Pa.Super. 2005)). "Concealment of a material fact can amount to actionable fraud if the seller intentionally concealed a material fact to deceive the purchaser; however, mere silence without a duty to speak will not constitute fraud." ***Viguers v. Philip Morris USA, Inc.***, 837 A.2d 534, 540 (Pa.Super. 2003), *aff'd*, 584 Pa. 120, 881 A.2d 1262 (2005).

"[I]n real estate transactions, fraud arises when a seller knowingly makes a misrepresentation, undertakes a concealment calculated to deceive, or commits non-privileged failure to disclose." ***Milliken, supra*** at 140 (quoting ***Youndt, supra*** at 545). "Fraud is a generic term used to describe anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture." ***Id.*** (quoting ***Youndt, supra*** at 545).

> "In Pennsylvania, fraud of any kind must be pleaded in a complaint with particularity." ***Kern v. Kern***, 892 A.2d 1, 8 (Pa.Super. 2005) (citing Pa.R.Civ.P. 1019(b)). While it is impossible to establish precisely what degree of particularity is required to sufficiently allege fraud, it is well-settled that the following two conditions must always be met: "The pleadings must adequately explain the nature of the claim to the opposing party so as to permit him to prepare a defense[,] and they must be sufficient to convince the court that the averments are not merely subterfuge." ***Youndt***[*, supra* at 544-45].

***Rudy v. Lesniak***, 343 A.3d 1261, 1267-68 (Pa.Super. 2025), *appeal denied*,

___ Pa. ___, 355 A.3d 800 (2026).

Instantly, Appellants alleged in their complaint that they had expressly requested confirmation that the Property was not subject to any water damage and that "all Defendants expressly assured Plaintiffs that no such water damage or infiltration had ever occurred. These representations were reflected in the legally-obligated disclosures provided by the seller and the seller's agent." (Complaint at ¶¶ 9, 34). Appellants averred that they retained Buyers' Agents as their realtors because they had "represented that they were experts in the area" and that Tiger "resided in a home in the same neighborhood" as the Property. (*Id.* at ¶¶ 26, 27). Appellants claimed that because they had learned from neighbors that flooding was common in the neighborhood, Tiger knew or should have known of water infiltration in the basement. (*Id.* at ¶ 45). With respect to count III-fraud, Appellants further pled:

> 68. Plaintiffs hereby incorporate the preceding paragraphs contained in this pleading as though fully set forth herein.
>
> 69. At all times material, Defendants represented that the Home was in compliance with the applicable building codes and industry standards, was in excellent condition, did not contain material defects and was not subject to water infiltration.
>
> 70. These statements were misrepresentations as the Home and the surrounding property were improperly constructed and graded, leading to significant and substantial water infiltration.
>
> 71. Moreover, as set forth above, Defendants knew or should have known of the water infiltration and grading

defects.

72. Plaintiffs relied on these misrepresentations in deciding to purchase a home from Defendants.

73. As a result of Defendants', and its agents, misrepresentations, Plaintiffs purchased the Home that was subject to water infiltration and flooding.

74. As a result of Defendants' deceptive and intentionally fraudulent conduct, Plaintiffs have been significantly damaged.

75. Moreover, Defendants' conduct has diminished the resale value of Plaintiffs' Home, as these defects and damages must be disclosed when the Home is sold.

76. Defendants' actions were outrageous in that they were committed wrongfully, knowingly, oppressively, intentionally, with an evil motive, actual malice, wanton and reckless disregard for the law, gross negligence and/or reckless indifference to the rights of Plaintiffs. Therefore, Plaintiffs are entitled to recover punitive damages.

(Complaint at ¶¶ 68-76).

In its Rule 1925(a) opinion, the trial court explained its order sustaining the preliminary objections filed by Buyers' Agents as follows:

Instantly, Appellants contend that [Buyers' Agents] concealed the existence of prior water infiltration. Nevertheless, Appellants did not allege that [Buyers' Agents] knew of any specific defect or water infiltration at the Property. Likewise, Appellants make no allegation that [Buyers' Agents] were informed of any previous water infiltration or of defects at the Property and failed to disclose the same to Appellants. Instead, Appellants merely claim that Tiger lived in the same neighborhood and should have known that the Property would be subject to the same flooding issues that other homes in the neighborhood allegedly experienced.

- 16 -

>Even accepting as true all well-pleaded facts, we fail to see how [Buyers' Agents'] alleged knowledge of the neighborhood in general would be material to the specific transaction. Again, there was no allegation that [Buyers' Agents] knew of any water infiltration at the Property. Nor is there an independent duty to investigate the contents of the SDS.
>
>Moreover, Appellants failed to present a *prima facie* case that [Buyers' Agents] made any knowing misrepresentation regarding the Property, concealed any information regarding the Property in order to deceive, or that they failed to disclose any non-privileged information regarding the Property. Again, Appellants alleged that [Tiger] lived in the same neighborhood and [was an] expert realtor … and thus, imputed knowledge of some neighborhood properties experience flooding to [Buyers' Agents]. Notwithstanding such an inference, it does not transmute any of such alleged knowledge to material information for the Property. Appellants do not assert that Tiger knew of any water infiltration or flooding **at the Property**, which would have been material. As such, [the trial court found] no error in sustaining [Buyers' Agents' preliminary] objection and dismissing Appellants' cause of action in fraud against [Buyers' Agents].

(Trial Court Opinion, entered 8/19/25, at 12-13) (emphasis in original).

Accepting all the material facts set forth in the complaint as true, the record supports the trial court's finding that Appellants failed to assert a legally cognizable cause of action for fraud against Buyers' Agents. As the trial court acknowledged, Appellants did not aver that Buyers' Agents had any specific knowledge of water infiltration at the Property. The general averments that because Tiger lived in the area she should have known of water infiltration in the basement of the Property are no more than conclusory statements and, without specific facts from which Tiger's specific knowledge about the Property

can be reasonably inferred, are insufficient to survive preliminary objections. *See Lerner, supra*. Accordingly, we discern no error or abuse of discretion in the trial court's determination that Appellants failed to plead fraud with sufficient particularity against Buyers' Agents to convince the court that such averments are not merely subterfuge. *See Rudy, supra*. Appellants' first issue is meritless.

In their second issue, Appellants argue that the trial court erred when it granted Buyers' Agents' motion for summary judgment and dismissed Appellants' claims for count V-negligence and count VII-UTPCPL violation. For purposes of disposition, because this issue encompasses two distinct questions, we first address the court's grant of summary judgment for count V-negligence and then will proceed to address the grant of summary judgment for count VII-UTPCPL violation.

First, Appellants argue that Buyers' Agents had a duty of care both to know about latent defects in the home and to ensure that any representations concerning the purchase of the Property were correct. Specifically, they assert that even assuming that Buyers' Agents were not aware of the water infiltration "the circumstances surrounding the transaction bound [Tiger] to ascertain the truth prior to assuring [Appellants] that no water infiltration had occurred." (Appellants' Brief at 46). Hence, Appellants argue that a real estate agent has a duty to investigate the truth of any representations made. (Appellants' Brief at 45-46) (citing *Antatis v. Kolarosky*, No. 1311 WDA

2019, 2020 WL 1174500 (Pa.Super. filed Mar. 11, 2020) (unpublished memorandum)).[4] Alternatively, Appellants suggest that even if this Court has not recognized such a duty in the past, this Court should find a duty in this instance based on the relationship between the parties, the inequity of placing the duty to investigate for water damage on buyers themselves, and a public interest in realtors being required to disclose any knowledge they have about water infiltration. (*Id.* at 51-53). On these grounds, Appellants conclude that the trial court erred in granting Buyers' Agents' motion for summary judgment on their claim of negligence.[5] We disagree.

Our standard of review of an order granting summary judgment is well settled:

> We view the record in the light most favorable to the

---

[4] Appellants rely on *Antatis* in support of their claim that Buyers' Agents had a duty to investigate the representations made in the SDS. However, we note that *Antatis* concerned a claim for fraud, not negligence. *See id.* (wherein buyers' agent misinformed buyers there was no point in having home inspection and that getting one done prior to closing was waste of time even though agent know of prior water intrusions into home and yet made those comments). Furthermore, *Antatis* is readily distinguishable from the instant case because the agent in that case had knowledge of prior water intrusion into the home; whereas, here there is no evidence that Buyers' Agents had any knowledge of prior water intrusion in the Property. *Id.* Thus, Appellants' reliance on *Antatis* affords them no relief.

[5] In our discussion of the first issue raised, we affirmed the trial court's order sustaining the preliminary objections and dismissal of Appellants' Count III-fraud, against Buyers' Agents. Although Appellants again have argued that Tiger and Advance Realty's failure to ascertain the truth about water infiltration amounted to actionable fraud (*see* Appellants' Brief at 41-45), we decline to readdress that claim here, where the trial court dismissed the claim of fraud at the preliminary objections stage. (*See supra* at 4, n.2).

nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no material fact and it is clear that the moving party is entitled to judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Shellenberger v. Kreider Farms*, 288 A.3d 898, 905 (Pa.Super. 2023) (internal citations and quotation marks omitted). Further:

Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Further, failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Id.* at 905-06 (internal citations and quotation marks omitted).

To establish a claim of negligence against a real estate agent, a plaintiff must prove that the agent owed a duty to the plaintiff, breached that duty, that the breach proximately caused damages, and actual loss suffered by the plaintiff. *Ramalingam v. Keller Williams Realty Grp., Inc.*, 121 A.3d 1034, 1042 (Pa.Super. 2015). Notably, "unless there is a duty upon the

- 20 -

defendant in favor of the plaintiff which has been breached, there can be no cause of action based upon negligence." **Minnich v. Yost**, 817 A.2d 538, 541 (Pa.Super. 2003), *appeal denied*, 573 Pa. 710, 827 A.2d 1202 (2003) (citation omitted).

In **Bortz v. Noon**, 556 Pa. 489, 729 A.2d 555 (1999), the Pennsylvania Supreme Court considered whether an agent had a duty to buyers in the context of a negligent misrepresentation claim, for failing to use reasonable care in ascertaining the truth of representations passed along to buyers, when the realtor passed along information that she had received from the title company, that the property had a clean septic dye test. There, our Supreme Court decided that the record did not support a conclusion that the agent had an independent duty to investigate the accuracy of the septic dye test, explaining that "[t]here is no record evidence that the Agent had specialized knowledge of septic systems, that she pretended to have such knowledge, or that she assumed the obligation of guaranteeing or providing this information to the Buyer." **Id.** at 504-05, 729 A.2d at 563. The Court further explained:

> We believe that imposing upon the Agent the duty to investigate, in the unique circumstance of this case, would place too high a burden on real estate agents. It would be an unreasonable burden on them because it would make it their responsibility to guarantee the accuracy of pre-closing tests done by persons with whom they have no relationship. Thus, we hold that a real estate broker has no duty to make an independent investigation of a contractor's report, where the real estate broker did not have any agency or contractual relationship with the third party.

*Id.* at 505, 729 A.2d at 563. Indeed, the Real Estate Licensing and Registration Act explicitly provides that "[u]nless otherwise agreed, a licensee owes no duty to conduct an independent inspection of the property and owes no duty to independently verify the accuracy or completeness of any representation made by a consumer to a transaction reasonably believed by the licensee to be accurate and reliable." 63 P.S. § 455.606a(i).

Nevertheless, as this Court has noted, there is a distinction between agents having no duty to investigate, and agents having actual knowledge about defects. In the context of failure to disclose material defects, a duty arises from an agent's knowledge of defects and the materiality of the undisclosed information. ***See Roberts v. Est. of Barbagallo***, 531 A.2d 1125, 1130 (Pa.Super. 1987) (holding that agent of estate may be liable to third party for its own deceit in not disclosing that property contained banned urea formaldehyde foam insulation ("UFFI") despite agent knowing of UFFI and knowing that its presence was material).

Instantly, the trial court found that Appellants' negligence claim against Buyers' Agents failed because Appellants failed to show that Buyers' Agents breached a duty owed to Appellants. The court explained that "[t]he record is devoid of any facts alleged by [Appellants] to support the claims that [the Agent Defendants] were aware of any construction and/or grading defects, water infiltration issues, or drainage/flooding problems at the Property." (Trial Court Opinion, entered 10/11/22, at 5-6). The court went on to state:

[Appellants] have not identified a breach of any duty owed to them by the Agent Defendants. Again, [Appellants] make only general averments that all Defendants owed [Appellants] a duty of care to ensure that all water infiltration problems were properly disclosed. These general averments coupled with failure of [Appellants] to allege any credible facts to show knowledge held by the Agent Defendants of water infiltration at the Property which could plausibly support a claim against them leads to the inescapable conclusion that Count V (negligence) cannot survive.

(Trial Court Opinion, entered 10/11/22, at 7).

The record supports the trial court's determination that Appellants failed to establish that Buyers' Agents breached a duty owed to Appellants. In the context of a negligence claim, a duty arises from the agent's knowledge of defects and the materiality of the undisclosed information, yet here there is no evidence that Buyers' Agents had any actual knowledge of any prior water infiltration in the Property. *See Roberts, supra*. Although Appellants are correct that there is a duty on agents to disclose **known** instances of water intrusion in a house, their argument ignores the fact that they have produced no evidence that Buyers' Agents knew about water intrusion at the Property. Likewise, Buyers' Agents did not have a duty to independently investigate the veracity of the statements made in the SDS that there was no water infiltration in the Property. *See* 63 P.S. § 455.606a(i). Accordingly, because Buyers' Agents had no knowledge of prior water intrusion and did not have a duty to independently investigate whether there was water intrusion at the Property, they did not make a representation that they knew to be false. As such, the

trial court did not abuse its discretion or commit an error of law in granting Buyers' Agents' motion for summary judgment on count V-negligence.

In the second part of Appellants' issue, they claim that the trial court erred in granting summary judgment in favor of Buyers' Agents on count VII-UTPCPL violation. Appellants argue that Buyers' Agents engaged in deceptive conduct that created a likelihood of confusion or misunderstanding, and that Appellants justifiably relied on this deceptive conduct to their financial detriment when they purchased the Property. Specifically, the deceptive conduct alleged is that Buyers' Agents failed to disclose information about water intrusion at the Property. Appellants insist that whether they justifiably relied on the deceptive conduct was a question of fact for the fact-finder to decide, and therefore the trial court erred in granting summary judgment on this claim. We disagree.

"To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." **Yocca v. Pittsburgh Steelers Sports, Inc.**, 578 Pa. 479, 501, 854 A.2d 425, 438 (2004) (citing **Weinberg v. Sun Co.**, 565 Pa. 612, 777 A.2d 442, 446 (2001)). As this Court has explained:

> The UTPCPL is Pennsylvania's consumer protection law and seeks to prevent "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce...." The purpose of the UTPCPL is to protect the public from unfair or deceptive business practices. Our Supreme Court has stated courts should

liberally construe the UTPCPL in order to effect the legislative goal of consumer protection.

The UTPCPL provides a private right of action for anyone who "suffers any ascertainable loss of money or property" as a result of "an unlawful method, act or practice." Upon a finding of liability, the court has the discretion to award "up to three times the actual damages sustained" and provide any additional relief the court deems proper. Section 201–2(4) lists twenty enumerated practices which constitute actionable "unfair methods of competition" or "unfair or deceptive acts or practices." The UTPCPL also contains a catchall provision at 73 P.S. § 201–2(4)(xxi).

***Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC***, 40 A.3d 145, 151-52 (Pa.Super. 2012) (emphasis omitted).

Under the UTPCPL's catchall provision, "unfair or deceptive acts or practices" include "engaging in any … fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. 201–2(4)(xxi). "[A]ny deceptive conduct, 'which creates a likelihood of confusion or of misunderstanding,' is actionable under 73 P.S. § 201-2(4)(xxi), whether committed intentionally (as in a fraudulent misrepresentation), carelessly (as in a negligent misrepresentation), or with the utmost care (as in strict liability)." ***Gregg v. Ameriprise Fin., Inc.***, 195 A.3d 930, 939 (Pa.Super. 2018), *aff'd*, 664 Pa. 567, 245 A.3d 637 (2021).

Instantly, the trial court explained:

There are no factual allegations in the complaint to support the claim that [Buyers' Agents] engaged in any unfair or deceptive acts or practices or that they made any misrepresentations regarding water infiltration at the Property. The alleged misrepresentations at issue were contained in the SDS. The conclusory allegation that

[Buyers' Agents] knew or improperly failed to discover that the [P]roperty had water issues is unsupported both legally and factually. [Appellants] rely only upon general allegations regarding water infiltration at other properties in the community thus deducing that the Agent Defendants knew or should have known that there was such a condition at the [P]roperty. [Appellants] cannot cite to any legal duty of the Agent Defendants to have inspected or discovered any such condition or that they had any knowledge that such a condition existed at the [P]roperty.

(Trial Court Opinion, 12/8/22, at 10-11). The trial court continued:

[Appellants] do not identify with any degree of specificity whatsoever any representations attributable to the Agent Defendants about the condition of the Property, specifically the presence or extent of water infiltration at or before the time of settlement. [Appellants] allege that the Agent[] Defendants had actual knowledge of construction defects but remained unable to identify individuals who had that knowledge and specifically what that knowledge was.

(*Id.* at 12).

We agree with the trial court's reasoning. Appellants alleged that Buyers' Agents engaged in fraudulent or deceptive conduct upon which Appellants justifiably relied to their financial detriment. However, other than general allegations that Buyers' Agents did not inform Appellants about water intrusion, Appellants have not identified any specific fraudulent or deceptive conduct attributable to Buyers' Agents. As discussed, Appellants have presented no evidence that Buyers' Agents knew of water infiltration in the Property and made any statements to either deceive Appellants about their knowledge of water infiltration or to mislead Appellants as to the same. Although justifiable reliance is typically a question of fact for the jury, as the

trial court explained, Appellants' UTPCPL claim does not reach the justifiable reliance issue where they did not present any evidence in support of the deceptive conduct element of their claim. On this record, we cannot say that the trial court erred in granting Buyers' Agents' motion for summary judgment at count VII-UTPCPL violation. Appellants' second issue is meritless.

In their third issue, Appellants argue that the trial court erred when it granted Seller's Agents' motion for judgment on the pleadings as to Appellants' claims count III-fraud and count V-negligence. For purposes of disposition, we address each claim separately.

This Court has set forth our well-settled standard of review of a ruling on a motion for judgment on the pleadings as follows:

> Our standard of review of a ruling on a motion for judgment on the pleadings is *de novo*, and our scope of review is plenary. **See SpiriTrust Lutheran v. Wagman Constr., Inc.**, 314 A.3d 894, 904 (Pa.Super. 2024). A motion for judgment on the pleadings is similar to a demurrer. **See Washabaugh v. Gaudenzia, Inc.**, 316 A.3d 1008, 1011 (Pa.Super. 2024)[, *appeal denied*, ___ Pa. ___, 333 A.3d 1267 (2025)]. "Judgment on the pleadings is proper only where the pleadings evidence that there are no material facts in dispute such that a trial by jury would be unnecessary." **Five Star Bank v. Chipego**, 312 A.3d 910, 918 (Pa.Super. 2024) (citation omitted).
>
> Like the trial court, we "must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted." **Washabaugh**[*, supra*] at 1011. Grant of a motion for judgment on the pleadings is proper "only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise." **Id.** (citation omitted).

***Boyle v. Meyer***, 344 A.3d 839, 844 (Pa.Super. 2025).

Appellants argue that Seller's Agents' act of concealing the material fact of water infiltration amounts to actionable fraud. Appellants maintain that the specific pleadings in the complaint, that "all Defendants expressly assured Plaintiffs that no such water damage or infiltration had ever occurred," and that "McCartney was the agent for Defendant Dietrich and knew about and was involved in the misrepresentations of quality," sufficiently pled the intentional misrepresentation necessary for a claim of fraud. (Complaint at ¶¶ 9, 14). Appellants further pled that because McCartney lived in the same neighborhood as the home, she was a member of the community and was aware that flooding was common in the community generally. (***Id.*** at ¶¶ 36, 44). Appellants insist that these pleadings sufficiently set forth material facts to support their claim of fraud against Seller's Agents and, therefore, the trial court erred in granting Seller's Agents' motion for judgment on the pleadings on Appellants' fraud claim.

We reiterate that to prove fraud, plaintiffs must establish the following elements by clear and convincing evidence: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." ***Weissberger v. Myers***, 90 A.3d 730, 731 (Pa.Super. 2014). ***See***

- 28 -

*also Milliken, supra* at 140.

Here, the trial court explained that "count III of [Appellants'] Complaint was dismissed … because [Appellants] failed to identify any credible written or oral representation with the specificity required of a fraud claim." (Trial Court Opinion, entered 12/8/22, at 7). The court further elaborated its reasons for granting Seller's Agents' motion for judgment on the pleadings on count III-fraud as follows:

> [Appellants] allege the Agent Defendants made oral and written representations, but [Appellants] were unable to produce any such writings or identify with any degree of specificity what the representations were, how they were made, or who made them. Rather, [Appellants] rely upon assertions that Defendants McCartney and Tiger live in the same general neighborhood and knew or should have known that the homes in the area are subject to water infiltration. [Appellants] further allege that neighbors experience similar water infiltration issues, but do not identify the identity of any such neighbors or the source of that information sufficient to support a fraud claim. This failure is fatal to [Appellants'] claims for fraud. … These vague and factually unsupported allegations by [Appellants] simply and clearly do not meet the legal threshold. [Appellants'] persistent failure to properly plead facts sufficiently specific to support a claim for fraud make it clear that Count III was properly dismissed.

(*Id.* at 7-8).

Based on our review, we see no error in the trial court's order granting Seller's Agents' motion for judgment on the pleadings. *See SpiriTrust Lutheran, supra*. Accepting as true all well pleaded statements of fact and admissions, the pleadings fail to establish that Seller's Agents made a knowing or reckless misrepresentation concerning water infiltration at the Property.

*See Weissberger, supra*. Appellants' general assertion that "all Defendants expressly assured Plaintiffs that no such water damage or infiltration had ever occurred" refers to those "representations [that] were reflected in the legally-obligated disclosures provided by the seller and the seller's agent," (*see* Complaint at ¶ 9), and does not in itself contain a specific averment of a representation, material to the transaction, that was made falsely with knowledge of its falsity or recklessness as to whether it is true or false. *See Milliken, supra*. This generalized averment does not comply with our Rules of Civil Procedure, which require "averments of fraud or mistake [to] be averred with particularity." Pa.R.C.P. 1019(b). Additionally, Appellants' inference that Seller's Agents must have known of water infiltration at the Property because flooding was common in the neighborhood and, therefore, McCartney, who lived in the neighborhood, likely knew about water infiltration, is not sufficient to establish knowledge of water infiltration **at the Property itself**. Accordingly, Appellants did not adequately set forth factual allegations in the complaint to support their assertion that Seller's Agents made any misrepresentations about water infiltration at the Property. Therefore, the trial court did not err in granting Seller's Agents' motion for judgment on the pleadings for count III-fraud. *See Boyle, supra*.

With respect to the trial court's grant of judgment on the pleadings for count V-negligence, Appellants argue that the complaint set forth allegations necessary to establish that Seller's Agents had a duty to disclose material

defects of which they had knowledge and breached that duty. Specifically, Appellants maintain that Seller's Agents had a duty to inform them about water infiltration and failed to do so, and Appellants relied on Seller's Agents' failure to disclose the water infiltration and were damaged as a result. Appellants argue that because there was clearly a duty owed, the trial court similarly erred in granting the Seller's Agents' motion for judgment on the pleadings on Appellants' negligence claim. We disagree.

It is well established that, "[a] cause of action in negligence requires allegations that establish the breach of a legally recognized duty or obligation that is causally connected to the damages suffered by the complainant." **Bilt-Rite Contractors, Inc. v. The Architectural Studio**, 581 Pa. 454, 470-71, 866 A.2d 270, 280 (2005) (quoting **Sharpe v. St. Luke's Hospital**, 573 Pa. 90, 95, 821 A.2d 1215, 1218 (2003)) (citation omitted). "The primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff." **Id.** (quoting **Althaus ex rel. Althaus v. Cohen**, 562 Pa. 547, 552, 756 A.2d 1166, 1168 (2000)).

Here, the trial court explained that it granted Seller's Agents' motion for judgment on the pleadings because Appellants failed to identify a breach of any duty owed to them. The court pointed out that Appellants

> make only general averments that all Defendants owed
> Plaintiffs a duty of care to ensure that all water infiltration
> problems were properly disclosed. These general
> averments coupled with failure of the Plaintiffs to allege any
> credible facts to show knowledge held by the Agent
> Defendants of water infiltration at the Property which could

> plausibly support a claim against them leads to the inescapable conclusion that Count V negligence claim cannot survive, thus it was properly dismissed.

(Trial Court Opinion, entered 12/8/22, at 9).

Although Appellants insist that Seller's Agents were aware of the water infiltration in the Property, our review of the complaint reveals that Appellants do not plead any specific allegations that would establish that Seller's Agents had any knowledge of water intrusion at the Property. The general averments that Seller's Agents must have known about water infiltration based on the fact that McCartney lived in the neighborhood is insufficient to establish that Seller's Agents breached a specific duty owed to Appellants. Accordingly, the trial court did not err when it granted Seller's Agents' motion for judgment on the pleadings with respect to count V-negligence.

We next turn to Appellants' fifth and sixth issues, wherein they claim that the trial court erred in granting the motions for summary judgment filed by Seller's Agents and Dietrich and dismissed count I-RESDL violation.[6] Specifically, Appellants insist that the trial court erred when the court interpreted the RESDL as being a statute of repose rather than operating under a statute of limitations. Therefore, they claim the court erred when it

_____

[6] Based on our determination that the RESDL operates as a statute of repose such that Appellants' claims under the RESDL were barred, we need not reach Appellants' fourth issue arguing that the court erred in granting summary judgment on the RESDL claim because of an alleged genuine issue of material fact as to the credibility of Seller's Agents in their denial of knowledge of water intrusion at the Property.

dismissed the RESDL claim based on the statute of repose violation. Appellants maintain that Section 7311(b) of the RESDL is specifically identified as a statute of limitations, and there is no controlling precedent applying it as a statute of repose. Construed as a statute of limitations, Appellants argue the RESDL is subject to both the discovery rule and the equitable tolling doctrine. Appellants acknowledge that the trial court and Seller's Agents rely on a federal case, **Star v. Rosenthal**, 884 F.Supp. 2d 319 (E.D.Pa. 2012), for its determination that the RESDL operates as a statute of repose; however, they argue that the federal case is not precedential and therefore this Court should base our determination on the words of the RESDL identifying it as a statute of limitations. We disagree.

This issue presents a pure legal question of statutory interpretation and as such, our standard of review is *de novo* and our scope of review is plenary. **Kornfeind v. New Werner Holding Co.**, 674 Pa. 115, 126, 280 A.3d 918, 925 (2022). "In construing a statute, a court must give effect to the legislature's intent and to all the statute's provisions. 1 Pa.C.S. § 1921(a). The statute's plain language is the best indicator of the legislature's intent." *Id.* (case citation omitted).

> To ascertain the plain meaning, we consider the operative statutory language in context and give words and phrases their common and approved usage. Courts must give effect to a clear and unambiguous statute and cannot disregard the statute's plain meaning to implement its objectives. A statute is ambiguous when there are at least two reasonable interpretations of the text. Only if the statute is ambiguous, and not explicit, do we resort to other means of discerning

legislative intent. When a statute is ambiguous, courts apply the factors in the Statutory Construction Act to discern the legislature's intent.

***Kornfeind, supra*** at 126-27, 280 A.3d at 925 (citations and internal quotation marks omitted).

A statute of limitations limits the time for a plaintiff to bring suit based on when a cause of action accrues. ***Vargo v. Koppers Co., Inc.***, 552 Pa. 371, 715 A.2d 423 (1998). Statutes of repose similarly limit the time for a plaintiff to bring suit; however, a statute of repose is not related to the accrual of any cause of action. ***Gidor v. Mangus***, \_\_\_ Pa. \_\_\_, \_\_\_, 345 A.3d 629, 640 (2025). Thus, "statutes of repose begin to run at the time of the negligent act, while statutes of limitations do not begin to run until the cause of action accrues." ***Matharu v. Muir***, 86 A.3d 250, 263 (Pa.Super. 2014). ***See also Abrams v. Pneumo Abex Corp.***, 602 Pa. 627, 648, 981 A.2d 198, 211 (2009) (stating: "A statute of repose is defined as a 'statute barring any suit that is brought after a specified time since the defendant acted ..., even if this period ends before the plaintiff has suffered a resulting injury'"). As our Supreme Court has explained:

> A statute of limitations limits the time for a plaintiff to bring suit based on when a cause of action accrues. ***Vargo***, 715 A.2d at 425. A cause of action accrues "when an injury is inflicted and the corresponding right to institute a suit for damages arises." ***Gleason v. Borough of Moosic***, 609 Pa. 353, 15 A.3d 479, 484 (2011). While a statute of repose also limits the time for a plaintiff to bring suit, unlike a statute of limitations, a statute of repose "'is not related to the accrual of any cause of action'" because "the injury need not have occurred, much less have been discovered."

- 34 -

> ***Abrams***, 981 A.2d at 211 (internal quotations and citations omitted). "Where a limitations period begins with a definitely established event that is independent of an injurious occurrence or discovery thereof, the statute is considered to be one of repose." [***City of Phila. v. City of Phila. Tax Rev. Bd. ex rel. Keystone Health Plan E., Inc.***, 635 Pa. 108, 132 A.3d 946, 952 (2015)] (citing ***Abrams***, 981 A.2d at 211 (explaining that "the period contained in a statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted")); ***see also Altoona Area Sch. Dist. v. Campbell***, 152 Pa.Cmwlth. 131, 618 A.2d 1129, 1134 (1992) (noting that "statutes of limitation begin to run from the time of an injurious occurrence or discovery of the same, ... whereas statutes of repose run for a statutorily determined period of time after a definitively established event independent of an injurious occurrence or discovery of the same"). Importantly, a statute of repose "completely abolishes and eliminates [a] cause of action" regardless of when the claim accrues and, in some cases, even before the claim accrues. ***Vargo***, 715 A.2d at 425 (citing ***Noll*** [***by Noll v. Harrisburg Area YMCA***, 537 Pa. 274, 643 A.2d 81, 84 (1994)]).
>
>                     \*     \*     \*
>
> We have explained that when the General Assembly drafts statutes of repose, it includes "'wording describing a definitely established event which commences the statutorily determined [repose] period[.]'" ***Vargo***, 715 A.2d at 426 (quoting ***Altoona Area Sch. Dist.***, 618 A.2d at 1134). Importantly, the General Assembly does not tie the repose period to "whether a cause of action has accrued or whether any injury has resulted." ***Abrams***, 981 A.2d at 211. Rather, the focus is on whether the "limitations period begins with a definitely established event that is independent of an injurious occurrence or discovery thereof[.]" ***City of Phila.***, 132 A.3d at 952. If so, "the statute is considered to be one of repose." ***Id.***

***Gidor, supra*** at \_\_\_, 345 A.3d at 640-41. Furthermore, "because statutes of

repose not only bar a party's right to a remedy, but abolish and eliminate a

cause of action entirely, a plaintiff may not invoke the discovery rule or other equitable tolling considerations." *Id.* at \_\_\_, 345 A.3d at 641.

Section 7311(b) of the RESDL provides the following:

**Section 7311.  Failure to comply**

\* \* \*

**(b) Statute of limitations.**--An action for damages as a result of a violation of this chapter must be commenced within two years after the date of final settlement.

68 Pa.C.S.A. § 7311(b).  While the heading of section 7311(b) is "Statute of limitations," it is well settled "that we only look to the title of a statute if the text of the statute is ambiguous." *Gidor, supra* at \_\_\_, 345 A.3d at 639 (citing **Commonwealth v. Magwood**, 503 Pa. 169, 177, 469 A.2d 115, 119 (1983)).  **See also** 1 Pa.C.S.A. § 1924 (providing that "[t]he headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute shall not be considered to control[,] but may be used to aid in the construction thereof").  In other words, "the title cannot control the plain words of a statute and … even if a statute is ambiguous, the title may only be considered to resolve the uncertainty." *Gidor, supra* at \_\_\_, 345 A.3d at 639 (brackets and internal quotation marks omitted).

In **Gidor**, our Supreme Court evaluated whether section 7512 of the Home Inspection Law operated as a statute of limitations or a statute of repose.  There, our Supreme Court held that despite section 7512 being titled as a statute of limitations, the text of section 7512 was "plain and

unambiguous in commanding that '[a]n action to recover damages arising from a home inspection report must be commenced within one year after the date the report is delivered.' 68 Pa.C.S.A. § 7512." *Id.* at ___, 345 A.3d at 640. The High Court explained that "when the General Assembly drafts statutes of repose, it includes 'wording describing a definitely established event which commences the statutorily determined [repose] period[.]'" *Id.* at 641 (citing *Vargo, supra* at 426). The *Gidor* Court recognized that section 7512 was similar to the construction statute of repose, explaining that both statutes command that an "action ... must be commenced within [a certain amount of time] after [the occurrence of a definitely established event that is independent of an injurious occurrence or discovery thereof]." *Id.* at ___, 345 A.3d at 642. Ultimately, concluding that section 7512 followed the established framework of setting forth an established event triggering the commencement of a repose period, the Court held that section 7512 was a statute of repose. *Id.*

Here, the trial court offered the following explanation of its order granting summary judgment in favor of Dietrich and Seller's Agents with respect to Appellants' claim brought under the RESDL:

> The statute provides that claims brought under the [RESDL] must be brought within two years from the date of settlement. Although the statute is titled as one of limitation, it does not run from a subjective event, rather from a firm, objective date and contains no tolling provision. Therefore, it operates as a statute of repose which extinguishes all causes of action at the end of a time certain. The [RESDL] states: "an action for damages as a result of a

> violation of this chapter must be commenced within two years after the date of final settlement." 68 Pa.C.S.A. § 7311(b). Although labeled as a statute of limitations, its interpretation and application as a statute of repose by a Pennsylvania federal court is instructive here: "… a title has minimal probative value regarding the actual character of this provision given that other Pennsylvania statutory provisions that indisputably impose statutes of repose are nonetheless sometimes identified by the General Assembly as statutes of limitations." [**Star, supra** at 325]. … The settlement date in this transaction occurred on July 14, 2017, and [Appellants] commenced this litigation on March 23, 2020, two years and eight months after the final settlement date.

(Trial Court Opinion, entered 12/8/22, at 13-14).

Based upon the clear and unambiguous language of section 7311(b), we agree with the trial court and conclude that the statute is intended to be a statute of repose, and not a statute limitations, because the action commences on the date of "the occurrence of a definitely established event that is independent of an injurious occurrence or discovery thereof" — in this case, the date of final settlement. **See Gidor, supra**. We note the similarities between section 7311(b) and section 7512, with both sections commanding that an action for damages pursuant to that chapter must be commenced within a certain time after a definitely established event, and independent of any injury or discovery of any injury. Section 7311(b) follows the established framework of a statute of repose and specifies that actions for damages must be commenced within two years after the date of final settlement. Thus, notwithstanding its title, it is a statute of repose. Accordingly, we agree with the trial court that because the instant litigation was commenced on March

23, 2020, two years and eight months after the final settlement date, Appellants' claims under the RESDL are barred by the statute of repose. Therefore, the trial court did not err in granting the motions for summary judgment filed by Dietrich or Seller's Agents with respect to count I-RESDL violation.

Appellant's final issues concern the trial court's grant of Dietrich's motions *in limine*.[7] We review a trial court's decision to grant or deny a motion *in limine* for an abuse of discretion. ***Parr v. Ford Motor Co.***, 109 A.3d 682, 690 (Pa.Super. 2014).

> Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. ***Commonwealth Financial Systems, Inc. v. Smith***, 15 A.3d 492, 496 (Pa.Super. 2011) (citing ***Stumpf v. Nye***, 950 A.2d 1032, 1035-1036 (Pa.Super. 2008)[, *appeal denied*, 599 Pa. 711, 962 A.2d 1198 (2008)]). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be

---

[7] The discussion portion of Appellants' brief does not align with the questions presented. Appellants combine their final questions into a separate section "E" in the discussion portion of their brief, which is divided into three segments. The first concerns both the trial court's classification of the RESDL as a statute of repose and the court's decision to exclude the SDS as evidence for other claims. (***See*** Appellants' Brief at 65-70). The second subsection also concerns the trial court's exclusion of any agreement other than the Agreement of Sale, specifically arguing that the trial court erred in precluding the SDS under the parol evidence rule. Finally, the third subsection concerns whether the court erred in precluding the testimony of Appellants' expert. For clarity of disposition, we will first address the arguments concerning the trial court's preclusion of the SDS, and then separately will address the preclusion of Appellants' expert witnesses.

clearly erroneous." ***Grady v. Frito–Lay, Inc.***, 576 Pa. 546, 839 A.2d 1038, 1046 (2003).

***Keystone Dedicated Logistics, LLC v. JGB Enters., Inc.***, 77 A.3d 1, 11 (Pa.Super. 2013).

First, Appellants assert that the trial court excluded admission of the SDS based on the court's finding that the RESDL claims were barred by the statute of repose. Appellants argue that the trial court's conclusion that the RESDL claims were barred by the statute of repose did not require the court to exclude the SDS as evidence in support of Appellants' other claims. Appellants claim that in enacting the RESDL, the General Assembly did not intend to restrict other remedies; therefore, Appellants insist that the court's preclusion of the SDS based on the statute of repose barring the RESDL claims, constitutes an error of law where the preclusion had the effect of extinguishing Appellants' claims under the UTPCPL. We disagree.

It appears to be an issue of first impression for this Court whether an SDS made pursuant to the RESDL, should remain admissible in support of other claims where any claims under the RESDL itself are barred by the two-year statute of repose. Accordingly, we look to the language of the RESDL itself.

The RESDL applies to all residential real estate transfers and mandates certain disclosures:

> Any seller who intends to transfer any interest in real property shall disclose to the buyer any material defects with the property known to the seller by completing all

- 40 -

applicable items in a property disclosure statement which satisfies the requirements of [§] 7304 (relating to disclosure form). A signed and dated copy of the property disclosure statement shall be delivered to the buyer in accordance with [§] 7305 (relating to delivery of disclosure form) prior to the signing of an agreement of transfer by the seller and buyer with respect to the property.

68 Pa.C.S.A. § 7303. *See also Wentworth v. Steinmetz*, 349 A.3d 189, 198 (Pa.Super. 2025) (explaining: "A basement that floods, a roof that leaks, beams that were damaged by termites, an asbestos-tile kitchen floor: these are the conditions our legislature requires sellers to disclose if they are known").

The legislative history of the RESDL indicates "that the RESDL 'is intended to protect the purchaser of real property, and the method of protection is a disclosure statement that is included within the bill that the seller has to complete so that presumably the buyer accurately knows what the seller knows about the property when the sale occurs.'" *Phelps v. Caperoon*, 190 A.3d 1230, 1245 (Pa.Super. 2018) (quoting Pa. Senate Journal 2138, June 18, 1996 (statement of Sen. David J. Brightbill)). The legislature emphasized the consumer protection purpose of the RESDL, explaining:

It says if you know there is a problem, then tell us there is a problem so that when we buy your house we know what that is, and if we know upfront and still agree to your price, then we know that the price was worth whatever it is we are willing to pay…

*Id.* (quoting Pa. Senate Journal 2138-39, June 18, 1996 (statement of Sen.

Jake Corman)).

This Court has also explained that the RESDL does not foreclose independent common law tort and contract claims, and this Court has held that SDS's made in compliance with the RESDL are admissible in support of those common law claims. *See, e.g., Hosler v. Tweedlie*, 306 A.3d 361, 374 (Pa.Super. 2023), *appeal denied*, ___ Pa. ___, 318 A.3d 96 (2024) (affirming finding of fraud based on seller's representations contained within RESDL form). As previously discussed, the RESDL also contains a two-year statute of repose, limiting the timeframe in which sellers remain liable after the sale of a property. *See* 68 Pa.C.S.A. § 7311(b) (requiring that "[a]n action for damages as a result of a violation of this chapter must be commenced within two years after the date of final settlement").

The legislative history of the RESDL discussed above demonstrates that in its enactment of the RESDL, the General Assembly sought to protect consumers in real estate transactions, and therefore mandated disclosure of such defects in the SDS. The General Assembly also limited actions brought under the RESDL based on the SDS by a two-year statute of repose. We note that the RESDL did not foreclose common law tort or breach of contract claims, nor did the RESDL foreclose claims under the UTPCPL. However, the RESDL neither expands nor restricts these existing common law remedies. *See* 68 Pa.C.S.A. § 7311(a) (stating: "This subsection shall not be construed so as to restrict or expand the authority of a court to impose punitive damages or apply

other remedies applicable under any other provision of law").

In our view, extending a seller's liability for such mandatorily disclosed statements beyond the two-year statute of repose would run afoul of the express statement declining to expand remedies applicable under other provisions of law. In other words, if a buyer were able to use the mandatory disclosure statement in support of common law claims of fraud or tort against the seller beyond the two-year statute of repose, the RESDL and its mandatory disclosure requirements would be used to expand remedies available under other provisions of law. *See* 68 Pa.C.S.A. § 7311. Accordingly, we conclude that the trial court did not abuse its discretion when it granted Dietrich's motion *in limine* and precluded Appellants from using the SDS in support of their breach of contract, negligence, and UTPCPL claims, because the statute of repose for the RESDL had passed.

Next, Appellants argue that the trial court erred when it granted Dietrich's motion *in limine* to exclude any agreement other than the Agreement of Sale. Specifically, Appellants maintain that the SDS was effectively incorporated into the Agreement of Sale, where the Agreement of Sale provided that "the [RESDL] requires that before an agreement of sale is signed, the seller in a residential real estate transfer must make certain disclosures regarding the property to potential buyers in a form defined by law." (Appellants' Brief at 70-71). Appellants claim that this phrasing effectively incorporated the SDS into the Agreement of Sale, and therefore

the trial court erred in granting Dietrich's motion *in limine* to exclude any agreement other than the Agreement of Sale. Appellants also contend that the parol evidence rule does not bar evidence of seller disclosure statements generally.[8] We disagree.

Appellants' issue concerns the trial court's application of the parol evidence rule. The parol evidence rule provides that when parties have reduced an agreement to a final and fully integrated writing, the law declares the writing to be the best and only evidence of the agreement and all preliminary agreements are superseded by the written contract. ***Rudy, supra*** at 1268.

In ***Hosler, supra***, this Court held that "absent express incorporation of the RESDL form into an agreement of sale, which is not present in the case *sub judice*, representations made in the RESDL form cannot be found to exist within the four corners of an agreement of sale." ***Hosler, supra*** at 374 n.11 (explaining there is "no provision in RESDL that expressly states that representations made pursuant to this law are incorporated into an agreement of sale").

Notably, Pennsylvania case law has recognized an exception to the parol

---

[8] Appellants' argument is based on a trial court decision from the Allegheny County Court of Common Pleas, ***Vaughn v. Drab***, 73 Pa. D. & C.4th 550, 558 (Com. Pl. 2005). We remind Appellants that we are not bound by decisions of a Court of Common Pleas, even if they are directly on point. ***Keller v. Mey***, 67 A.3d 1, 5 n.6 (Pa.Super. 2013).

evidence rule concerning fraud claims. Specifically, when a party alleges that they were fraudulently induced into an agreement, "no valid agreement came into being and parol evidence is admissible to show that the alleged agreement is void." ***Blumenstock v. Gibson***, 811 A.2d 1029, 1036 (Pa.Super. 2002), *appeal denied*, 573 Pa. 714, 828 A.2d 349 (2003) (citing ***1726 Cherry Street Partnership v. Bell Atlantic Properties, Inc.***, 653 A.2d 663, 666 (Pa.Super. 1995), *appeal denied*, 544 Pa. 647, 664 A.2d 976 (1995)).

Instantly, the parties agree that the Agreement of Sale constitutes the parties' written contract for the sale of the Property. The Agreement of Sale specifically contains an integration clause limiting the agreement to the written document, and provides:

> (A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This Agreement will not be altered, amended, changed or modified except in writing executed by the parties.

(Agreement of Sale at 11). Significantly, the Agreement of Sale does not expressly incorporate the SDS as part of the agreement.

Upon review, we agree with the trial court that because there is no language in the Agreement of Sale that expressly incorporated the SDS into the Agreement of Sale, the representations in the SDS are not a part of that

written agreement. **See Holser, supra**. Although Appellants generally assert that the parol evidence rule does not bar evidence of a seller disclosure statement, they have not set forth an argument of fraudulent inducement into the contract and have not established that the fraudulent inducement exception to the parol evidence rule applies.[9] **See Blumenstock, supra**. Therefore, the trial court did not abuse its discretion when it granted Dietrich's motion *in limine* and excluded evidence of other agreements as part of the Agreement of Sale.

Finally, we turn to Appellants' last claim, that the trial court erred in granting Dietrich's motion *in limine* to preclude the testimony of Appellants' experts. However, before we address the merits of this issue, we must consider whether Appellants have preserved this claim on appeal.

Our Rules of Appellate Procedure make clear that appellate briefs must conform in all material respects to the briefing requirements set forth in the Rules. Pa.R.A.P. 2101. Arguments must be followed by an appropriate discussion and citation of pertinent authorities. **See** Pa.R.A.P. 2119(a). Where an appellant fails to properly raise or develop issues on appeal, or where a brief is wholly inadequate to present specific issues for review, a court

---

[9] We note that even if this exception applied, it would permit evidence establishing the fraudulent inducement for the purpose of invalidating the sales contract. It would not permit evidence of a secondary document as part of the Agreement of Sale to attempt to establish a claim for breach of contract or a UTPCPL violation.

will not consider the merits of the claims raised on appeal. ***Butler v. Illes***, 747 A.2d 943, 944 (Pa.Super. 2000) (holding appellant waived claim where she failed to set forth adequate argument concerning her claim on appeal; appellant's argument lacked meaningful substance and consisted of mere conclusory statements; appellant failed to cogently explain or even tenuously assert why trial court abused its discretion or made error of law). ***See also Lackner v. Glosser***, 892 A.2d 21 (Pa.Super. 2006) (explaining appellant's arguments must adhere to rules of appellate procedure, and arguments which are not appropriately developed are waived; arguments not appropriately developed include those where party has failed to cite relevant authority in support of contention). Indeed, "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant." ***Coulter v. Ramsden***, 94 A.3d 1080, 1088 (Pa.Super. 2014), *appeal denied*, 631 Pa. 719, 110 A.3d 998 (2014).

Instantly, Appellants' one paragraph discussion of their final claim does not contain any citation to or discussion of pertinent authority and does not make any attempt to apply the facts of record to controlling authority in support of their claim. Appellants' conclusory argument section, lacking any citation to relevant case law, is woefully inadequate. We will not act as Appellants' counsel and develop their arguments. ***See Coulter, supra***. Thus, Appellants' final issue is waived. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 06/23/2026